### ALASKA UNITED GOLD MIN. CO. v. MUSET.

(Circuit Court of Appeals, Ninth Circuit. February 3, 1902.)

#### No. 710.

1. WRIT OF ERROR—FILING BEFORE ASSIGNMENTS OF ERROR—APPLICATION TO CORRECT—MOTION TO DISMISS.

Where a writ of error is issued and filed before the assignments of error are filed, in violation of rule 11 of the circuit court of appeals, and at the time of filing the latter, and before the time for suing out a writ of error has expired, plaintiff in error applies to the court for leave to withdraw the writ and correct the proceeding by presenting a new petition, writ, and bond, and such application is opposed by the defendant in error, his motion thereafter made to dismiss the writ because of such irregularity should be denied.

2. MINES AND MINING—PRINCIPAL AND AGENT—FOREMAN—VICE PRINCIPAL—NEGLIGENCE.

Where a corporation owning two mining plants has a general superintendent, with general oversight over both plants, and a foreman of each mine, who employs and discharges the men, and directs and controls the entire operations of his mine and of the various gangs of men there employed, such foreman is a vice principal, for whose acts and negligence in the conduct of such mine the owner is responsible.

3. SAME—SHAFT—BLASTING—MEANS OF ESCAPE.

Plaintiff's intestate and another were employed in defendant's mine at the bottom of a shaft. There was an elevator in the shaft, and when about to blast they gave a certain signal to the engineer, who signified that he understood, by raising the bucket a few feet and then lowering it. They then ignited the fuse, and signaled the engineer to hoist, and were raised a short distance, and then lowered, and the engineer shouted down the shaft that the compressed air by which the elevator was operated was cut off. Deceased's companion climbed up the elevator rope and escaped, but deceased could not do so, and was killed by the explosion. The air was cut off by the foreman, who had full charge of the operation of the mine. There had been an iron ladder in the shaft, which was removed some weeks before the accident to be replaced by a new chain ladder, which was on the ground, and was to be placed in the shaft that day. Held, that defendant was negligent in failing to provide adequate means of escape for the men engaged in the blasting.

4. SAME—CONTRIBUTORY NEGLIGENCE—EVIDENCE—QUESTIONS FOR JURY.

The question of contributory negligence of deceased and of his fellow workmen in not having the chain ladder in place before the accident was properly left to the jury, there being evidence that the mine foreman had directed the foreman of the gang in which deceased worked to

place such ladder in the shaft at noon, the accident occurring in the forenoon, and also that deceased and the other men did not know the ladder had been furnished ready to place in the shaft.

In Error to the District Court of the United States for Division No. 1 of the District of Alaska.

Henry Muset, the administrator of the estate of Edward Hegman, deceased, brought an action against the plaintiff in error, the Alaska, United Gold Mining Company, to recover damages for the death of the decedent, which it was alleged was caused by the negligence of the plaintiff in error. At and prior to the date of his death, the deceased was an employé of the plaintiff in error, working in the Seven Hundred mine, under the direction of the foreman of the mine. The evidence was that Muset and the deceased were working together in a shaft, and that when they were ready to set off a blast at the bottom of the shaft Muset went up the shaft by the elevator to obtain a hot iron to light the fuses. Having secured the hot iron, he went down the shaft, and then rang five bells as a signal to the engineer in charge of the hoist to indicate they were about to blast. In response thereto the engineer lifted the bucket about three or four feet from the bottom of the shaft, and then dropped it down, which was his signal that he understood, and stood ready to hoist them up. When the men had lighted the fuses they rang one bell as a signal to hoist, and were raised a short distance, and let down again, when the engineer called down the shaft that the compressed air, which was the motive power of the hoist, was cut off. Muset climbed the cable, which was a quarter inch steel cable, and escaped. The deceased, it seems, was unable to do so, and was killed by the blast. It was shown that the property of the plaintiff in error was situated on Douglas Island, Alaska. That it consisted of two mines and two stamp mills, one for each mine, the mines being known as the "Ready Bullion" and the "Seven Hundred," the latter of which was situate a distance from the mill, to which the ore was carried by a tramway. C. A. Weck was the general superintendent of the plaintiff in error. Under him were four foremen, one for each mine, and one for each stamp mill. H. B. Pope was the foreman of the Seven Hundred mine. According to the testimony, it was he who personally cut off the air supply which deprived the engineer of the power of lifting the hoist. It was shown, also, that he had personal notice that the blast was about to be set off, and that he directed Muset to hurry down the shaft with the hot iron. Concerning his relation to the plaintiff in error and his powers and duties as foreman, the testimony was that in the operation of the Seven Hundred mine there were several bosses of the men engaged in the different branches of the work, such as the shop boss, the shift boss, and the pit boss, and that Pope was the general foreman or supervisor of all; that he was the man who directed the men and told them what to do, hired and discharged all the men employed in and about the mine, and gave them their time checks, upon which they were paid by the general superintendent. Muset testified: "No man showed me anything, only Pope, or gave me any orders." Another witness testified that the mine was under Pope's supervision; that his duties were to advise the men, and show them what to do and where to work; and that he had charge of the blacksmith shop and hoist, the men working in the elevator, and the miners and the direction of them, and of the entire mine. Another witness testified that the men employed in the various departments of the Seven Hundred mine, such as blacksmiths, engineers, miners, and drill men, were under Pope's immediate supervision. Evidence was introduced by the plaintiff in error to show that it had provided a way of escape from the shaft by means of an iron ladder, and that its absence from the shaft at the time when the accident occurred was owing to the negligence of the deceased or that of his fellow workmen in that shaft. The testimony of Pope was not taken on the trial, but Pianfetti, who was the boss of the particular shift in which the deceased was working when the accident occurred, testified that he and the others had received instructions to put in the shaft a new chain ladder on the morning of October 9th, the date of the accident, and that on talking the matter over

with the deceased and Muset they concluded not to put in the ladder until after the blast went off, and that at the time of the accident the chain ladder was lying in the blacksmith shop ready for their use, and that at 8 o'clock that morning Pope had told Pianfetti that the chain ladder was ready to be put in the shaft. This conversation was denied by Muset. Another witness testified that he heard the conversation between Pope and Pianfetti, and that the former instructed the latter to put the ladder down at noon. The accident occurred a little before noon. The jury returned a verdict for the defendant in error for the sum of $10,000. On motion for a new trial, the court required that $7,000 be remitted, and thereupon rendered judgment for $3,000.

Malony & Cobb and John Flournoy, for plaintiff in error.

Lorenzo S. B. Sawyer and Crews & Hellenthal, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

A motion is made to dismiss the writ of error. The principal ground of the motion, involving the only question which we find it necessary to discuss, is that the writ of error was issued and filed 20 days before the assignments of error were filed, whereas rule 11 of this court provides that no writ of error shall be allowed until the assignment of errors shall have been filed. The record shows, however, that on the day when the assignments of error were filed, the plaintiff in error applied to the court for leave to withdraw its writ of error, and to correct the proceedings by presenting a new petition, writ, and bond at the same time with the assignments of error. The application was opposed by counsel for the defendant in error. In view of that fact and the failure of the court to allow the application, we think the present motion should be denied. The substantial result secured by rule 11 is that the assignment of error shall be on file at the time when the writ of error is taken out and the citation issued. The defendant in error has no ground of complaint if he had notice of the filing of these papers, and in open court opposed the application for leave to file a new writ. To dismiss the writ of error would have the effect only of imposing upon the plaintiff in error the additional burden of bringing up a new transcript on a new writ of error, the time for suing out the same having not yet expired.

The assignments of error present two principal questions—First, was Pope, the foreman in charge of the mine, a fellow servant with the deceased? Second, if he was not a fellow servant, and the plaintiff in error was answerable for his negligence, did the plaintiff in error supply an adequate means of protecting the deceased against danger from blasts by providing a means of escape from the shaft other than the hoist?

Upon a consideration of the whole evidence concerning the duties of the foreman of the Seven Hundred mine, and his relation to the plaintiff in error, we are of the opinion that the trial court committed no error in ruling that he was the representative of the plaintiff in error. The plaintiff in error was a corporation owning large mining

and milling properties on Douglas Island, Alaska, all of which were placed under the charge of a single superintendent. Its properties consisted of two distinct mines, and a separate stamp mill for each. The men employed in each mine were engaged in different classes of work. They consisted of blacksmiths, engineers, miners, and drill men, with different shifts for each branch of the work. Pope, the foreman, had general supervision of the Seven Hundred mine, and of all the men employed therein or connected therewith. There was evidence that he hired and discharged the men and directed their work. He was, we think, the general superintendent in charge of that branch of the business of the plaintiff in error. Although he was called a foreman, his duties were evidently more than those of an ordinary foreman. It is not shown that Weck, the general superintendent, had any direct supervision over the men, or ever inspected the premises in which they worked, or was present at any time to see personally that they were supplied with proper appliances and a safe place wherein to work, or that it was his duty so to do. One of the witnesses, who was a workman at the Seven Hundred mine, testified: "I have no idea who was the superintendent of the mine. No man showed me anything, only Pope, or gave me any orders. They told me Mr. Weck was superintendent, but I didn't know it." We think, within the principle of the case of Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772, the representative of the defendant corporation, so far as the question of the duty which the corporation owed to the employés who worked in and about the Seven Hundred mine was concerned, was Pope, and not Weck, notwithstanding the fact that Weck was the superior officer of Pope, and was the disbursing officer who had the power to approve or disapprove the acts of the foreman in hiring and discharging the men, and through whom the corporation paid all the employés of its various properties upon time checks furnished by the foreman of each. The plaintiff in error was a corporation whose home office was at a distance from the place where its properties were situated. Being a corporation, it could act only by means of officers and agents. It placed all of its properties and business on Douglas Island in charge of a general superintendent. It placed its four distinct and separate departments of business each under the charge of a foreman or superintendent, who was subject to the general superintendent, but who was given substantially the entire control of that department. The general superintendent had no personal relation to either of the four departments. He had no office or place of business at either of the mines or the mills. It is not shown that he was ever present at the Seven Hundred mine, or inspected it, or had personal knowledge of its operation or its appliances. The only officer or agent of the corporation who had such knowledge of that mine was Pope. He it was who stood in the place of the master to the men. His duty it was to see that the men were supplied with the necessary appliances for their safety. Before he cut off the supply of compressed air which operated the hoist in the shaft, on the morning of the accident, it was his duty to see that the men therein working were furnished other safe means of escape therefrom. In relation to that duty, he stood in the place of the corpora-

tion, and for his neglect to discharge it the corporation is liable.   He was not a mere foreman of a gang of men, as was the case of the negligent foreman in Railroad Co. v. Peterson, 162 U. S. 346, 16 Sup. Ct. 843, 40 L. Ed. 994, and Mining Co. v. Whelan, 168 U. S. 86, 18 Sup. Ct. 40, 42 L. Ed. 390.   He was the representative of the corporation placed in charge of its servants in a separate department of its business, and as such he was the vice principal, within the definition furnished in the Baugh Case.   The plaintiff in error could not meet the full measure of its duty as a master to its servants by placing its various properties under the charge of a general superintendent, who was not a superintendent in fact as to any particular branch of its service, and say that, because the general superintendent who had no knowledge of the want of proper appliances or defects in machinery or apparatus was not negligent, the master shall not be held for damages for the negligence in those respects of the foreman, who had the particular supervision and control over its property and its servants. The plaintiff in error owed a positive duty to its employés,—the duty of affording them a safe place to work, and safe tools to work with. That duty was necessarily delegated to a representative,—an individual who, for that purpose, should stand in the corporation's place. We have no hesitation in saying that that duty as to the men employed in the Seven Hundred mine was delegated to the foreman, Pope.

The question of the contributory negligence of the deceased was properly left to the jury.   Some of the testimony tended to show that the plaintiff in error, through its foreman, Pope, had made ample provision for the safety of the workmen in the shaft by providing a ladder whereby they might escape after blasts were lighted, and that the ladder would have been available for the deceased but for the negligence of himself or that of his fellow workmen in the shaft.   There was other evidence, however, to the effect that the men who worked in the shaft had been working there and setting off blasts for three weeks without a ladder, and that when on the morning of October 9th, the day of the accident, a ladder was ready in the blacksmith shop, the foreman instructed Pianfetti, one of the fellow workmen with the deceased, to place it in the shaft that day at noon.   The accident occurred a little before noon.   There was other evidence that the workmen in the shaft had on several occasions mentioned the absence of the ladder in that shaft, and that none of them knew or heard that the ladder was ready for them until after the accident.   It was for the jury, under these circumstances, to say whether or not the deceased was guilty of contributory negligence, and whether the negligence of his fellow workman was the cause of his death, and there was no error in submitting that question to the jury, as the court did, with proper instructions.

The judgment of the district court is affirmed.