HOERSGEN v. SOUTHWESTERN PORTLAND CEMENT CO.

(Circuit Court of Appeals, Fifth Circuit.  June 2, 1913.)

No. 2,274.

1. MASTER AND SERVANT (§ 159*)—MASTER'S LIABILITY FOR INJURY TO SERV-
ANT—FELLOW SERVANTS—"VICE PRINCIPAL."

The general rule that the master cannot be held answerable in dam-
ages for an injury caused to one servant by the negligence of another is
subject in the federal courts to certain well defined exceptions, among
which are (1) that, when the one chargeable with the negligence has
such general control and occupies such a relation to the business in con-
nection with which the injury occurred that he takes the place of the
master, he is held to be a vice principal—the representative of the mas-
ter—and not a fellow servant, and when the business of the master is
so large and diversified that it naturally divides itself, or is divided, into
departments of service, the individuals placed by the master in charge
of the separate departments and given entire control therein are prop-
erly to be considered vice principals with respect to employés under them;
(2) when a servant is discharging some positive duty of the master to
employés, which he cannot so delegate to another as to escape liability
for its negligent performance or omission, the master's liability will ex-
ist, regardless of whether the negligent person was or was not a vice
principal.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 318–
325;  Dec. Dig. § 159.*

For other definitions, see Words and Phrases, vol. 8, pp. 7313–7316.]

2. MASTER AND SERVANT (§ 287*)—ACTION FOR INJURY TO SERVANT—QUES-
TIONS FOR JURY—FELLOW SERVANTS.

Defendant was a corporation engaged in making cement, having two
departments in its plant, one of buildings and one of machinery, under
control of a different person, each of whom had full charge of his depart-
ment with authority to hire and discharge men.  Plaintiff, who was em-
ployed in the machinery department, was directed by the superintendent
to take down a scaffold which had been built in erecting machinery.
Cleats by which the scaffold was secured had been removed, making it
unsafe to go upon it, which fact was known to the superintendent, but
was not known to plaintiff.  He was not told of it, but went upon the
scaffold, which fell, and he was injured.  Held, that whether the super-
intendent was a vice principal for whose negligence defendant was re-
sponsible, or whether in failing to warn plaintiff of the danger, he
omitted a positive duty of defendant, were properly questions for the
jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§
1034, 1045, 1051, 1052, 1054–1067;  Dec. Dig. § 287.*]

In Error to the Circuit Court of the United States for the Western
District of Texas;  Thomas S. Maxey, Judge.

Action at law by Bernhard Hoersgen against the Southwestern Port-
land Cement Company.  Judgment for defendant, and plaintiff brings
error.  Reversed.

Action for damages for personal injuries brought by Bernhard
Hoersgen, an alien, against the Southwestern Portland Cement Com-
pany, a corporation.

The defense was that the injury was caused by the negligence of a
fellow servant of the plaintiff.  The Circuit Court, after evidence for

the plaintiff had been received, directed a verdict for the defendant, on the ground that the plaintiff was injured through the negligence of a fellow servant. The plaintiff in this court assigns that the Circuit Court erred in directing the verdict.

S. Engelking, of San Antonio, Tex., and C. P. Johnson, of Lake Village, Ind., for plaintiff in error.

Richard F. Burges, of El Paso, Tex. (A. R. Burges, of El Paso, Tex., on the brief), for defendant in error.

Before PARDEE and SHELBY, Circuit Judges, and FOSTER, District Judge.

SHELBY, Circuit Judge. [1] It is a general rule that the master cannot be made answerable in damages for an injury caused to one servant by the negligence of another, both being engaged in the same common employment. But it is conceded, even by the courts that most rigorously enforce this rule, that there are exceptions to it, and that it is not absolutely and invariably controlling in all cases in which a master is sued for injuries caused by the negligence of another person in the employment of the master. The decisions in the state courts of last resort relating to the rule and the exceptions to it are conflicting to a degree without a parallel in any department of jurisprudence. In many jurisdictions there are exceptions to the rule based on the fact that the negligent servant was of a higher grade than the injured servant, and there are also exceptions based upon the nature of the injurious act as being one which was incidental to the discharge of functions which the master was absolutely bound to perform with reasonable care, whether he undertakes to perform them personally or deputes them to another servant.

A qualification of the general rule which is relevant here has been recognized by authorities which are controlling in this court. It is, in brief, that, when the one guilty of the negligence has such general control and occupies such a relation to the business in connection with which the injury occurred that he takes the place of the master, he is held to be a vice principal—the representative of the master—and not a fellow servant. And the principle of this qualification of the general rule is carried further. When the business of the master is so large and diversified that it naturally divides itself, or is divided, into departments of service, the individuals placed by the master in charge of the separate departments or branches of service and given entire control therein are properly to be considered with respect to employés under them, vice principals—representatives of the master. Northern Pacific Ry. Co. v. Dixon, 194 U. S. 338, 344, 24 Sup. Ct. 683, 48 L. Ed. 1006; Baltimore & Ohio Railroad v. Baugh, 149 U. S. 368, 383, 13 Sup. Ct. 914, 37 L. Ed. 772; Northern Pacific Railroad v. Peterson, 162 U. S. 346, 16 Sup. Ct. 843, 40 L. Ed. 994. See, also, Alaska United Gold Min. Co. v. Muset, 114 Fed. 66, 52 C. C. A. 14; and Klauder-Weldon Dyeing Mach. Co. v. Gagnon, 183 Fed. 962, 106 C. C. A. 302.

When a servant is discharging some positive duty of the master— that is, some duty which he cannot so delegate to another as to escape liability for its negligent performance or omission—his liability will

exist, regardless of whether the negligent person was or was not a vice principal. There are many such duties, and, among them, is the duty of informing a servant of special or extraordinary risks connected with his service. In such cases, whether the servant to whom such duty is delegated is higher or lower in the scale of employment is a matter of no importance. The duty is that of the master, and he is responsible to the servant for its due performance. Mercantile Trust Co. v. Pittsburgh & W. Ry. Co., 115 Fed. 475, 53 C. C. A. 207; Peters v George, 154 Fed. 634, 83 C. C. A. 408; Louisville & N. R. Co. v. Miller, 104 Fed. 124, 43 C. C. A. 436.

[2] If there was any evidence, which, if believed by the jury, would have brought the case within an exception to the general rule stated and would have authorized a verdict for the plaintiff, the verdict for the defendant should not have been directed.

The plaintiff was hired to work for the Southwestern Portland Cement Company in its plant at El Paso, Tex. The plant was divided into two departments, one of buildings and one of machinery. The estimated value of the former was $250,000, and of the latter $750,000. The building department was under the control of Mr. Classen. The machinery department was under the control of Mr. Billings, the master mechanic. The plaintiff was directed to work, and did work, under Mr. Billings in the machinery department. He was subject to Mr. Billings' orders. Billings had under his control from 4 to 45 laborers. The plaintiff was employed to erect machinery under Billings' orders. Billings had authority to discharge all employés in his department, including the plaintiff. There was evidence tending to show that there was no officer in charge of the machinery department except Billings, and that he had entire control of it. Connected with the machinery department was a large scaffold twenty feet high, so constructed that machinery weighing 25,000 pounds could be unloaded on it. It became necessary to dismantle and take down the scaffold. Cleats that made it secure were removed, which put it in a condition that made it dangerous for one to ascend the scaffold on a ladder. This condition was unknown to the plaintiff, but was known to Billings. Billings, knowing the dangerous condition and knowing that the plaintiff was in ignorance of it, ordered the plaintiff to complete the work of taking the scaffold down. He gave the order without informing the plaintiff of the danger. The cleats and their fastenings were so situated that the fact that they had been removed could not have been discovered by the plaintiff. Obeying the order, the plaintiff ascended a ladder to get on the scaffold, when, because of the absence of the cleats, the scaffold fell, carrying the plaintiff down with it, crushing his feet and causing him permanent injuries. Billings was conscious that it was his duty to warn the plaintiff of the danger, but negligently failed to do so in time to prevent the injury. He called to him just as the scaffold was beginning to fall.

It is the contention of the plaintiff here that Billings was the representative of the defendant, and that the latter is liable for his negligence in giving an order that sent the plaintiff needlessly into a dangerous position; and, also, that it was a positive duty of the master to

warn the plaintiff of the hidden danger, and that the master is therefore liable for the negligence of Billings in failing to warn the plaintiff.

At the conclusion of the evidence for the plaintiff, the verdict was, on motion, directed for the defendant. It does not seem advisable to comment further on the evidence than is necessary to decide whether or not such direction was justified.

We are of the opinion that the evidence, the tendency of which we have indicated, was such that the jury would have been authorized to find that Billings was the vice principal and the representative of the defendant in regard to the act of ordering the plaintiff to dismantle and take down the scaffold, and in failing to warn him of the special danger of the work arising from the removal of the cleats.

The judgment, therefore, must be reversed, and the cause remanded for a new trial.