## KLAUDER–WELDON DYEING MACH. CO. v. GAGNON.

### (Circuit Court of Appeals, Second Circuit.   December 12, 1910.)

### No. 81.

1. Master and Servant (§§ 150, 151, 286*)—Master's Liability for Injury to Servant—Dangerous Method of Doing Work—Failure to Instruct Servant.

Plaintiff, employed as a blacksmith in the blacksmith shop of defendant, which was a manufacturer of machines, was injured by the explosion of a piston head which he and a fellow workman were heating for the purpose of shrinking it onto a new piston rod. The heating of the head, which was hollow, was extremely dangerous, unless a vent was made therein to allow the escape of steam, which was likely to be generated in the interior. The shop was under the control and direction of a foreman, who represented defendant and was not a fellow servant of plaintiff. The foreman knew the danger, and that a hole should be made in the head before it was heated, but gave no instructions therefor, and no warning of the danger to plaintiff, who testified that he had no knowledge of it. *Held* that, if the foreman directed the heating to be done without giving such instructions or warning, he was negligent, and his negligence was that of defendant, and that on the evidence that question was one for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 297, 298, 1044; Dec. Dig. §§ 150, 151, 286.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. APPEAL AND ERROR (§ 1046*)—REVIEW—HARMLESS ERROR—CONDUCT OF TRIAL.

The examination of witnesses by the trial judge in an action at law in a federal court, and commenting on their testimony, while a practice not to be approved, is not reversible error, where the matters commented on were not vital, and the jury were correctly instructed, and told that they were the final arbiters on all questions of fact.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4134; Dec. Dig. § 1046.*]

In Error to the Circuit Court of the United States for the Northern District of New York.

Action at law by Simon Gagnon against the Klauder-Weldon Dyeing Machine Company. Judgment for plaintiff (174 Fed. 477), and defendant brings error. Affirmed.

On writ of error to review a judgment entered upon the verdict of a jury in the Circuit Court for the Northern District of New York for $3,145.50. The action was at common law to recover damages sustained by the plaintiff while in the employ of the defendant by reason of the explosion of a piston head upon which the plaintiff was at work. The verdict as rendered by the jury was $4,000, but was by stipulation of the plaintiff reduced to $3,000 after the trial judge had decided that he would set the verdict aside unless so reduced. The case was here on a former review and the judgment was reversed because hearsay evidence was admitted. On the first trial the verdict was also for $4,000. The opinion of this court on former review is reported in 166 Fed. 286, 92 C. C. A. 204.

Duell, Warfield & Duell (Charles H. Duell, Frederic P. Warfield, Holland S. Duell, and Royal W. France, of counsel), for plaintiff in error.

Henry V. Borst, for defendant in error.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

COXE, Circuit Judge. The defendant was at the time of the accident engaged in making dyeing machines at Amsterdam, N. Y. The plaintiff was employed by the defendant as a blacksmith. Henry Higgs was superintendent, and John C. Evenden was foreman of that part of the works where the plaintiff was employed. The work in hand at the time of the accident was fitting a new piston rod into the piston head of a small second-hand engine. One of the ways of doing this is heating the piston head until the metal expands sufficiently to admit the new rod and then inserting the rod, after the head has been removed from the fire. The contraction of the metal caused by cooling holds the head firmly on the rod. This was the method adopted in the present instance. Unless the precaution is taken to make a hole in the piston head, to permit the escape of steam and gases generated by the great heat, this process of shrinking on the head is a dangerous one and was known to be so by those familiar with the business. No vent was made in the present case and while the plaintiff and one Spore, a fellow machinist, were engaged in heating the head it exploded, killing Spore and injuring the plaintiff.

The principal question is—was the court justified in submitting the question of defendant's negligence to the jury?

In considering this question, we think the following propositions must be regarded as established:

First. Evenden, the foreman, had full authority in the blacksmith shop and represented the defendant in the work carried on there. If he were negligent in the discharge of his duty while directing the work his negligence, as matter of law, must be imputed to the defendant. He was not a fellow servant.

Second. The work of repairing the piston head by the shrinking process was an exceedingly dangerous operation unless a vent were made to permit the escape of vapor.

Third. Evenden knew of this danger and did not communicate it to the plaintiff or direct any one else to do so.

Fourth. The explosion occurred because this vent was not made.

Fifth. The plaintiff, who was employed as a blacksmith, did not know of this particular danger, at least he swears that he had "never seen one of these heads before" and did not know that they contained moisture and were liable to explode.

In these circumstances the crucial question was one of fact: Did the foreman direct the plaintiff to use the heating process, as the plaintiff contends, or the cold driving process, as the defendant contends? Evenden says he directed the use of the latter and his evidence is not directly contradicted; indeed, this could not well be done, as Spore, to whom the direction was given, was killed by the explosion. There was testimony, however, from which the jury might have found that the heating process was ordered by the foreman. One witness testifies that he heard Evenden say to Spore:

"Be careful, Jim, when you take that out; don't let Sime (the plaintiff) burn it."

It would be absurd to use such language regarding the cold driving process, and, if this direction were given, the jury were warranted in assuming that Evenden had directed the use of the heating process. Again, two witnesses swear that about twenty minutes after the accident, they heard Evenden say, "We made a mistake, we forgot to tap it." This is criticised, because Evenden may have said, *"he* forgot to tap it," instead of *"we* forgot to tap it." The difficulty with this contention is that both witnesses agree that he said, *"We* forgot to tap it." But, in any view, the expression denotes surprise, not that the heating process had been used, but that it had been used carelessly. If Evenden had directed the use of the cold process, would not his first exclamation of surprise and indignation have been—"He made a mistake, he did not use the process I told him to use?" If the jury believed that Evenden used the language quoted, they were justified in taking it into consideration in determining the question whether the hot process was ordered. It was certainly incompatible with the theory that the cold process was ordered.

The defendant's brief contains a persuasive argument to prove that the plaintiff's witnesses upon this question are mistaken and that some of them are unworthy of belief. If we were sitting as triers of the facts, it is quite possible that we might agree with the contention of defendant's counsel in this regard, but we cannot say as matter of law

that the plaintiff's proof was so inadequate as to require the court to set aside a verdict based thereon. There was a sharp dispute upon the testimony as to which process was ordered; this was for the jury to settle and it would have been error for the court to have taken it from them. The inference to be drawn from the plaintiff's testimony is clearly to the effect that the hot process was ordered. Evenden was there immediately before the explosion giving directions regarding the piston head. The testimony shows that he was a man tenacious of his authority and accustomed to be obeyed. There is a strong presumption that the subordinates of such a man, being themselves ignorant of the best methods to pursue, would not deliberately disobey his orders. In other words, the jury, in addition to the testimony, had a right to take into consideration the presumption that the process actually used by the workmen was the one which their foreman directed them to use.

The question now under consideration has been already passed upon by this court on the former writ of error. After discussing the hearsay testimony which was improperly received, the court says:

"Undoubtedly there was other testimony in the plaintiff's case which, pieced together, would have warranted the jury in finding that Evenden gave instructions through Spore that the plaintiff should heat the piston-head."

We do not think the trial court misapplied or misconstrued the rule relating to latent defects. There can be no question whatever that the work, if done by the heating process, was exceedingly dangerous. The moment steam was generated in the piston head it became as unsafe as if it contained dynamite or gunpowder. If, however, a vent were made for the escape of steam, it became absolutely innocuous. The foreman knew all these facts—the blacksmith knew none of them. The danger was hidden, nothing which the blacksmith could see indicated to him the peril lurking in the piston head.

It was clearly the duty of the foreman to inform the plaintiff of this peril which would confront him the moment heat was applied, unless the escape of steam was provided for. The making of the vent was not a mere incident or detail in the heating process; it was a momentous fact of which it was absolutely essential the plaintiff should know before he was required to do the work.

Various exceptions are directed to the action of the court in examining the witnesses and commenting on their testimony. We have frequently had occasion to say that in the trial of jury causes the wise and orderly course to pursue is to leave the examination and cross-examination of witnesses to counsel. For the court to take a prominent part in the trial creates misunderstanding and irritation and is quite likely to give the jury a wrong impression as to the attitude of the court. In the present case the statements of the court particularly complained of took place during the examination of the expert witnesses and related, generally, to some question of mechanics upon which the court and the witness were not in perfect accord. In no instance did the court express an opinion upon a really vital question. In view of the clear statements of the charge, which presented the issues impartially, we cannot think that any of the statements of the

court worked injury to the defendant. Assuming that the language of the court can be construed into the expression of an opinion injurious to the defendant, it must be remembered that in the federal courts it is not error for the trial judge to express an opinion upon the facts provided he makes it plain to the jury that in this domain they are the final arbiters.

There is no evidence, certainly no competent evidence, that the verdict was influenced in any way by the suggestion that the defendant was protected by insurance.

Other exceptions have been argued, but we think none of them is well taken and that it is unnecessary, in view of what has already been said, to discuss them in detail.

The verdict was a reasonable one, even before it was reduced, and the judgment thereon should be affirmed with costs.