## MOSS v. GULF COMPRESS CO.

(Circuit Court of Appeals, Fifth Circuit. January 7, 1913.)

### No. 2,371.

1. COURTS (§ 405*)—FEDERAL COURTS—APPELLATE PROCEDURE—DISMISSAL—FORMAL DEFECT IN RECORD.

That a petition for a writ of error, the order and writ, and assignment of errors are all entitled in the Circuit Court, although that court had been abolished, is not ground for dismissal in the appellate court, where the record in the cause is properly authenticated by the clerk and under the seal of the District Court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 1097–1103; Dec. Dig. § 405.*]

2. APPEAL AND ERROR (§ 668*)—IMPEACHMENT—BILL OF EXCEPTIONS—CERTIFICATE OF JUDGE.

A bill of exceptions properly authenticated by the signature of the judge cannot be impeached by evidence outside the record.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2861; Dec. Dig. § 668.*]

3. COURTS (§ 372*) — FEDERAL COURTS — AUTHORITY OF DECISIONS OF STATE COURTS.

In the absence of statutory regulation, the fellow-servant rule and its interpretation become a matter of general law as to which the federal courts apply their own rules of decision.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 977–979; Dec. Dig. § 372.*

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468.]

4. MASTER AND SERVANT (§ 189*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—VICE PRINCIPAL.

Under the federal decisions, neither mere superiority in rank nor the right of one servant to exercise control over another will constitute the former a vice principal of the corporation master with respect to the latter, but it must be shown that he is intrusted by the master with departmental control.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 427–435, 437–448; Dec. Dig. § 189.*]

5. MASTER AND SERVANT (§ 189*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—NEGLIGENCE OF "VICE PRINCIPAL."

Where defendant, a compress company, sent an agent alone to a place at a distance from its principal place of business to dismantle a compress, giving him absolute and exclusive direction of the means and method of doing the work with full discretion in the selection and use of appliances and men, such agent, as to the men employed by him, was a "vice principal," standing in the place of defendant, and for his negligence while acting in that capacity, causing an injury to an employé, defendant is liable.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 427–435, 437–448; Dec. Dig. § 189.*

For other definitions, see Words and Phrases, vol. 8, pp. 7313–7316.]

6. MASTER AND SERVANT (§ 226*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—ASSUMED RISKS.

An employé does not assume the risk of injury from negligence on the part of the master or his vice principal while acting in matters of supervision and direction.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 659–667; Dec. Dig. § 226.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

7. MASTER AND SERVANT (§ 286*)—ACTION FOR INJURY TO SERVANT—QUESTIONS FOR JURY.

Evidence considered, in an action by an employé for a personal injury, and held to require the submission to the jury of the question of the negligence of defendant's vice principal in directing plaintiff to work in a dangerous place, in view of plaintiff's inexperience.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1010–1050; Dec. Dig. § 286.*]

Pardee, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Eastern Division of the Southern District of Mississippi; Henry C. Niles, Judge.

Action at law by Ben C. Moss against the Gulf Compress Company; C. C. Hanson, receiver. Judgment for defendant, and plaintiff brings error. Reversed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Thomas Gaines Fewell, of Meridian, Miss. (C. B. Cameron, of Meridian, Miss., on the brief), for plaintiff in error.

Marcellus Green, of Jackson, Miss. (G. Q. Hall, G. W. Green, and Marcellus Green, Jr., all of Jackson, Miss., on the brief), for defendant in error.

Before PARDEE and SHELBY, Circuit Judges, and GRUBB, District Judge.

GRUBB, District Judge. This is a writ of error to review a judgment for the defendant below and the defendant in error in this court on a verdict directed by the court below at the conclusion of the plaintiff's testimony.

[1] There is submitted, also, a motion to dismiss or affirm. The motion to dismiss is based upon the ground that the petition to obtain the writ of error, the order allowing it, the writ itself, the assignment of errors, the bond, and the citation are all entitled as of the Circuit Court of the United States, when, in fact, the Circuit Court had been abolished before the writ of error was sued out and allowed by the trial court. The original printed record in the cause comes to this court under the hand and seal of the clerk of the District Court of the proper district, and properly authenticates these proceedings as having occurred in the District Court, and this controls the recital in the captions of the various proceedings mentioned.

[2] The defendant in error supports its motion to affirm upon the ground that, as is alleged, the bill of exceptions contained in the record and purporting to be signed by the district judge is a false one, and presents the certificate of the judge in support of its contention. It is sufficient answer to this contention that it is conceded that the district judge signed the bill of exceptions which is contained in the record, and that we cannot look beyond the record upon the question of its verity.

The motion to dismiss or affirm is denied.

Coming to the merits: The plaintiff in error, who was the plaintiff in the court below, sued the defendant in error for damages for personal injuries alleged to have been received by him while in the employment of the defendant, and while engaged in dismantling for it a compress at Meridian, Miss., on July 28, 1908. The declaration is contained in three counts, but the first only was relied upon by the plaintiff for recovery. The defendant had intrusted the management of the work of dismantling the compress to one of its agents, who was called a traveling engineer, named M. W. Wallace, and who had sole charge of the work for the defendant; the defendant being represented by no other officer or agent of superior grade to Wallace on the premises. All the work was under Wallace's exclusive direction and control. At the time of the accident to the plaintiff, Wallace, with the assistance of two negroes, was engaged in passing a coiled rope through a winch. Wallace was on the other side of the winch from where the rope was coiled, handling the rope after it had passed through the winch. The two negroes were on the opposite side of the winch from Wallace, uncoiling the rope so it could be fed into the winch. Wallace was able to handle the rope, after it passed through the winch, faster than the

two negroes could uncoil it and feed it into the winch. Wallace was anxious to finish the job quickly, and the negroes could not keep up with his work. It was in this situation that he directed the plaintiff to get in behind the winch and between it and where the negroes were uncoiling the rope, to guide the rope so it could be handled by the negroes on their side fast enough to keep up with Wallace's pace on the other side. The plaintiff obeyed the instruction of Wallace and took his position between the place where the negroes were uncoiling the rope and the winch, for the purpose of guiding the rope as it was uncoiled. It was while in this position that the plaintiff was injured. There were revolving cogs in the winch to the side of plaintiff as he stood guiding the rope. Wallace was still able to handle the rope faster than the negroes could uncoil it, and the slack thus being taken out of the rope on the side of the winch on which the plaintiff was standing, the taut rope struck plaintiff's body and threw him off his balance. In his endeavor to recover his balance his hand was caught in the cogs, causing the injury complained of.

This was the substance of plaintiff's own testimony, and he was the only witness examined. The defendant offered no testimony, but relied upon the insufficiency of plaintiff's evidence to establish his case. The court below was of the opinion that the plaintiff's evidence failed, as a matter of law, to show any negligence on the part of the defendant, and directed the verdict. The only question presented by the writ of error is the correctness of the court's action in so directing the verdict.

The record does not disclose any evidence tending to show that the defendant was guilty of negligence in failing to provide or maintain a reasonably safe place for plaintiff to perform his work. The general character of the work in which the plaintiff was engaged when injured was the dismantling of a compress. The increased hazard due to the general character of the work of demolition was a risk assumed by plaintiff, though it does not appear that his injury was due to any such hazard. Nor is there any evidence that the winch was either defective or unsuitable for the purpose for which it was being used at the time of the accident. Nor does it appear that the cogs in which plaintiff's hand was caught should have been better protected. Nor is there anything in the record to show that the location of the winch, with reference to its surroundings, was in any way improper, or that the plaintiff's fellow servants were incompetent. If liability on the part of the defendant exists, it must be predicated upon the breach of some other duty, than those mentioned.

The plaintiff relies also upon the alleged negligence of Wallace, who was in charge of the work of dismantling the compress, asserting that he was a vice principal of the defendant and not a fellow servant of the plaintiff. To entitle the plaintiff to recover on this theory, it was essential that the evidence tend to show that Wallace was a vice principal, and that, as such, he was guilty of negligence which was the cause of plaintiff's injury.

There is no statute in Mississippi changing the fellow-servant rule as it exists at common law, except as applies to railroad employés. The attempt of the Mississippi Legislature to enlarge the favored class of employés so as to include the employés of all corporations proved

abortive by reason of the decision of the Supreme Court of Mississippi that the act, so intended, was unconstitutional, because unjustly discriminating against the class of corporation employers. Chapter 87, Laws 1896; chapter 66, Laws 1898; Ballard v. Oil Co., 81 Miss. 507, 34 South. 533, 62 L. R. A. 407, 95 Am. St. Rep. 476.

[3] In the absence of statutory regulation, the fellow-servant rule and its interpretation becomes a matter of general law, as to which the federal courts apply their own rules of decision; and the status of Wallace as to being a vice principal or a mere fellow servant is to be determined in this case by the decisions of the federal courts rather than those of Mississippi. B. & O. R. R. Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914, 37 L. Ed. 772.

[4] According to the federal decisions, it is well settled that neither mere superiority in rank nor the right to exercise control by the delinquent servant over the injured servant will avail to constitute the delinquent servant a vice principal of the master. It is necessary that it be shown that he is intrusted by the master with departmental control, as defined by the courts.

In the case of B. & O. R. R. Co. v. Baugh, supra, the court said:

"Where the master is a corporation, there can be no negligence on the part of the master except it also be that of some agent or servant, for a corporation only acts through agents. The directors are the managing agents; their negligence must be adjudged the negligence of the corporation, although they are simply agents. So, when they place the entire management of the corporation in the hands of a general superintendent, such general superintendent, though himself only an agent, is almost universally recognized as the representative of the corporation—the master—and his negligence as that of the master. And it is only carrying the same principle a little further and with reasonable application, when it is held that, if the business of the master and employer becomes so vast and diversified that it naturally separates itself into departments of service, the individuals placed by him in charge of those separate branches and departments of service, and given entire and absolute control therein, are properly considered, with respect to employés under them, vice principals—representatives of the master—as fully and as completely as if the entire business of the master was by him placed under the charge of one superintendent."

In the case of Northern Pacific R. R. Co. v. Peterson, 162 U. S. 346, 16 Sup. Ct. 843, 40 L. Ed. 994, the court stated the rule as follows:

"The rule is that in order to form an exception to the general law of nonliability the person whose neglect caused the injury must be 'one who was clothed with the control and management of a distinct department, and not a mere separate piece of work in one of the branches of service in a department.' This distinction is a plain one, and not subject to any great embarrassment in determining the fact in any particular case.

"When the business of the master or employer is of such great and diversified extent that it naturally and necessarily separates itself into departments of service, the individuals placed by the master in charge of these separate branches and departments of service, and given entire and absolute control therein, may be properly considered, with respect to employés under them, vice principals and representatives of the master as fully and as completely as if the entire business of the master were placed by him under one superintendent."

In the case of Northern Pacific Ry. Co. v. Dixon, 194 U. S. 338–344, 24 Sup. Ct. 683, 685 (48 L. Ed. 1006), the court said:

"Another qualification suggested is where the one guilty of the negligence has such general control and occupies such relation to the work that he in effect takes the place of the employer—becomes a vice principal, or alter ego, as he is sometimes called. If an employer, whether an individual or a corporation, giving no personal attention to the work, places it in the entire control of another, such person may be not improperly regarded as the principal and his negligence that of the principal. That thought has in some cases been carried further, and, when it appeared that the work in which the employer was engaged was divided into separate and distinct departments, the one in charge of each of those departments has been regarded as also a vice principal."

In the case of Klauder-Weldon Dyeing Machine Co. v. Gagnon, 183 Fed. 962, 106 C. C. A. 302, the rule was applied by the Circuit Court of Appeals for the Second Circuit to the situation described as follows by the court:

"Evenden, the foreman, had full authority in the blacksmith shop and represented the defendant in the work being carried on there. If he were negligent in the discharge of his duty, while directing the work, his negligence, as matter of law, must be imputed to the defendant. He was not a fellow servant."

In the case of Alaska United Gold Mining Co. v. Muset, 114 Fed. 66, 52 C. C. A. 14, the Circuit Court of Appeals for the Ninth Circuit, said:

"The plaintiff in error was a corporation whose home office was at a distance from the place where its properties were situated. Being a corporation, it could act only by means of officers and agents. It placed all of its properties and business on Douglas Island in charge of a general superintendent. It placed its four distinct and separate departments of business each under the charge of a foreman or superintendent, who was subject to the general superintendent, but who was given substantially the entire control of that department. The general superintendent had no personal relation with either of the four departments. He had no office or place of business at either of the mines or the mills. It is not shown that he was ever present at the Seven Hundred mine, or inspected it, or had personal knowledge of its operation or its appliances. The only officer or agent of the corporation who had such knowledge of that mine was Pope. He it was who stood in the place of the master to the men. His duty it was to see that the men were supplied with the necessary appliances for their safety. Before he cut off the supply of compressed air which operated the hoist in the shaft, on the morning of the accident, it was his duty to see that the men therein working were furnished other safe means of escape therefrom. In relation to that duty, he stood in the place of the corporation, and for his neglect to discharge it, the corporation is liable. He was not a mere foreman of a gang of men, as was the case of the negligent foreman in Railroad Co. v. Peterson, 162 U. S. 346, 16 Sup. Ct. 843, 40 L. Ed. 994, and Mining Co. v. Whelan, 168 U. S. 86, 18 Sup. Ct. 40, 42 L. Ed. 390. He was the representative of the corporation placed in charge of its servants in a separate department of its business, and as such he was the vice principal, within the definition furnished in the Baugh Case. The plaintiff in error could not meet the full measure of its duty as a master to its servants by placing its various properties under the charge of a general superintendent, who was not a superintendent in fact as to any particular branch of its service, and say that, because the general superintendent who had no knowledge of the want of proper appliances or defects in machinery or apparatus was not negligent, the master shall not

be held for damages for the negligence in those respects of the foreman, who had the particular supervision and control over its property and its servants."

In Labatt on Master & Servant, vol. 2, § 534, p. 1517, the exception and its limits are thus stated:

"The rationale of the doctrine which declares the master to be responsible for the negligence of a departmental manager indicates that no employé can properly be placed in this category unless he is exercising all the functions which the master himself would exercise, if he were personally supervising the same section of his business. That is to say, his representative character is not established by any evidence which fails to show that there has been that complete transfer of the master's characteristic functions which implies that the transferee is invested with the right and duty, not of merely seeing that his subordinates perform some definite routine work in the manner prescribed, and with the appliances furnished, but of providing the appliances themselves, and of making such a disposition of the workmen in regard to those appliances as will most effectually secure the general results for the attainment of which the branch of the business under his control has been organized."

[5] Does the record show Wallace to have been a "vice principal" within the definition of that term, to be derived from the authorities cited? It is clear that his superiority in rank to the plaintiff and the other workmen engaged in the work of dismantling the compress, and his control over them, is not alone sufficient to establish that relationship to the master. If it exists, it must be derived from the fact that he may be said to have been in control of a department of the master's business. The doing of a single, though separate, piece of work on the master's premises would not suffice. In this case Wallace was sent by the defendant to a place distant from the defendant's principal place of business to dismantle a compress. He had the absolute and exclusive direction of the means and method of accomplishing this work, with full discretion as to the selection and use of appliances and men. All the other agents of defendant who were engaged with him were under his direction and control. The defendant had no other representative on the premises upon which the work was being done. If the defendant was not legally represented at the place of work by Wallace, then it must be said to have been without representation there, though it was there in fact engaged in doing the work, and owed its servants the nondelegable duty of supplying proper supervision over the work in which they were engaged.

This case differs from the one in which a foreman is engaged in supervising a separate piece of work, but one that is being done on the master's premises and under the immediate supervision of the foreman's superior, who in that case represents the master as vice principal. In this case the work being done by Wallace was not only separate and distinct, but was being done apart from the defendant's other managing agents and officers, who could not, for that reason, supervise and direct Wallace in the conduct of it, and could not, therefore, be vice principals. As in the nature of the case from the way in which the work was being done, the defendant could be represented in the management and doing of it only by Wallace, and necessarily intrusted the direction and discretion necessary to its conduct to him alone, we

think he must be considered, in the doing of it under these circumstances, to have been the vice principal of the defendant.

The negligence of Wallace, which would entitle the plaintiff to recover, would be with respect only to matters in which he was acting as the defendant's vice principal. As his scope as vice principal is confined to matters of supervision and direction, as distinguished from manual labor, so negligence, to be recoverable, must have occurred with relation to matters of supervision and direction, which are in the nature of nondelegable duties of the master. If the only negligence on Wallace's part consisted in the handling of the rope at a rapid speed, the plaintiff's case would necessarily fail, since Wallace, though a vice principal in some respects, could not be said to be one when engaging in work of this kind. The evidence of the plaintiff tends to show, however, that Wallace directed him to take a position behind the winch and in front of the position occupied by the negroes who were uncoiling the rope, and from it to guide the rope, and that the plaintiff took the position he was directed to take, and was injured while occupying it. This action of Wallace, in so placing the plaintiff, was an action of direction and supervision over the work and those engaged in it, and in giving this direction and in placing the men who were doing the work, Wallace acted in his capacity as vice principal, and bound the defendant by his acts of this character.

[6] Nor did the plaintiff assume the risk of injury from any negligence on the part of Wallace in respect to matters in which he acted as vice principal. He assumed the risk of injury caused by negligence of his fellow servants and all such other risks as were incident to his employment, but not such extra hazards as were the results of negligence on the part of the master himself or of his vice principal. In the case of Hough v. Railway Co., 100 U. S. 213–217 (25 L. Ed. 612), the Supreme Court, speaking of exceptions to the risks assumed by an employé, said:

"One, and perhaps the most important, of those exceptions, arises from the obligation of the master, whether a natural person or a corporate body, not to expose the servant, when conducting the master's business, to perils or hazards against which he may be guarded by proper diligence on the part of the master."

The question then is whether there is any evidence in the record from which the jury could have legitimately inferred that Wallace negligently caused the plaintiff's injury. The plaintiff complains that he was not warned by Wallace, when directed to assume the position behind the winch, of the presence of the unprotected cogs or of the fact that the rope was being handled by Wallace faster than the negro helpers could uncoil it, but as the plaintiff admits that he knew of the presence and condition of the cogs, and must have known the danger of coming in contact with them, before he assumed the position at which injury befell him, it is difficult to see how any failure to warn him of what he already knew could have contributed to his injury.

He admits that he knew that Wallace was handling the rope faster than the negroes could uncoil it. The record is not very clear as to whether he knew, or should have known, the attendant danger and

how to avoid it, and whether, if ignorant, he could have been instructed by Wallace so as to enable him better to avoid it in the position he was to assume. If he was ignorant of the danger and could have escaped the resulting injury by proper warning or instruction, then it was for the jury to say whether it was negligence on Wallace's part to put him there without some warning or instruction. If he was aware of the danger, or if warning or instruction, if given, would have not availed to enable him to avoid injury, then no negligence · could be predicated on the failure of Wallace to give him warning. The negligence of Wallace, in that event, if any, would be in the placing of the plaintiff in too dangerous a position. If Wallace was negligent in failing to warn him, his negligence would be that of the defendant, regardless of his grade of service, since the duty to warn of danger is a nondelegable duty, and a breach of it, even through the agency of a fellow servant, is the master's negligence. The second paragraph of the syllabus in the case of Peters v. George, 154 Fed. 634, 83 C. C. A. 408, asserts this principle of law in the following language:

"The duty to warn and instruct an employé who is set to perform a dangerous work with which he is unacquainted is a primary and absolute duty of the master to the servant, and he cannot relieve himself of liability for its nonperformance by delegating or intrusting it to a subordinate or to a fellow servant of such workman. Nothing short of actual notice of the danger to the workman who is to encounter it, with such cautionary explanation as may enable him to avoid it, will satisfy the requirement of the law, and the default of an intermediary, whether he be the highest officer in control or merely a fellow workman of the one exposed to the danger, is the default of the master."

In view of the unsatisfactory condition of the record as to whether the plaintiff knew of the likelihood of his being thrown off his balance and against the revolving cogs by the too rapid handling of the rope by Wallace, and as to whether any specific instructions could have been given him by Wallace when he placed him there, which would have enabled him to avoid injury in this way, we forbear from passing on the question as to whether the issue of Wallace's negligence in failing to warn the plaintiff should have been submitted to the jury. Upon a retrial of this case the evidence then adduced may remove the uncertainty in the present record in that respect.

[7] If Wallace was free from negligence in respect to warning, but negligent in respect to ordering the plaintiff to assume a dangerous position, in view of his inexperience and the rapid movement of the rope, then such negligence would possibly be defendant's negligence, only in the event Wallace is to be considered as a vice principal in doing the act complained of, as we have held him to be. Does the record supply evidence from which the jury could infer that Wallace negligently placed plaintiff in a dangerous position? It was open to inference that Wallace intended, when he directed plaintiff to take his place behind the winch and guide the rope, to continue to handle the rope, after plaintiff had assumed the position, as fast as he had been doing—which was too fast for the negroes to uncoil it and keep it slack. Indeed, that was his reason for so placing the plaintiff. If so, we think it was for the jury to say whether or not such a position,

in view of the way the rope was being handled by Wallace, and the incapacity of the negroes to properly pay it out so as to keep it slack when it was handled so rapidly, and in view of the danger to one in that position when the rope became taut, was too dangerous for one of plaintiff's experience to assume, even though the danger was decreased to some extent by the presence of the plaintiff and the assistance he was able to give the negroes in handling the rope. If it was, then it would be for the jury to say whether or not Wallace was negligent in directing him to assume it, regardless of whether the plaintiff was entitled to complain of a failure to properly warn him.

It is said, however, that there was no direction to assume the specific position he was occupying when injured. In response to the direction, plaintiff did in fact take that position, and there is enough in the record for the jury to have inferred, if they saw fit, that he assumed and occupied it with the acquiescence of Wallace, and to so have inferred also that it was the position Wallace intended he should take when he gave the order.

It is also said that his injury resulted, not from the position of danger that he was occupying, but from his admitted inattention to the movement of the rope. This applies to the issue of his contributory negligence. The question of his contributory negligence, first, in assuming the position of danger, in view of the order given him by his superior to do so, and, second, in not attending to the movement of the rope with greater diligence, was a question of fact, and not for the determination of the court.

For these reasons, we are of the opinion that the court below erred in directing a verdict for the defendant, and the judgment is reversed, and the cause remanded for further proceedings in conformity with this opinion.

PARDEE, Circuit Judge (dissenting). I think this case ought to be affirmed. The plaintiff was the only witness, so that the only dispute about the facts arises in his own evidence. Assuming that Wallace was the vice principal, the evidence does not show that the compress company was guilty of any negligence warranting a recovery by the plaintiff. The place was not dangerous, being in the open with no machinery about or in operation save a so-called drum, probably winch, which was being operated solely by running a rope through it by hand. The only order given was: "Get in there and do something. Guide that rope!" The plaintiff selected his own position, which was safe; and the only caution that could have been given, if any were necessary, would have been, "Be careful and do not stick your fingers in the cogs of the drum." Negligence can hardly be predicated on an order to an employé to go to work in a safe place.

Whether Wallace was the vice principal because he was superintending the dismantling of the compress at the time the plaintiff claims he was injured, Wallace and the plaintiff, both servants of the compress company, were jointly engaged in manual labor at the same time in a safe place, and if at that time and under those circumstances Wallace could be charged with any negligence, which he is not, it was

certainly the negligence of a fellow servant, for both Wallace and the plaintiff stood upon an equal footing, and no question of master's authority supervening.