INTERNATIONAL AGRICULTURAL CORPORATION v. SLAPPEY.

(Circuit Court of Appeals, Fifth Circuit. October 25, 1919.)

No. 3427.

1. APPEAL AND ERROR ⬅➡927(7)—PRESUMPTION AS TO TRUTH OF EVIDENCE.
   Assumption of the truth of plaintiff's evidence is justified on review of refusal to direct verdict for defendant.

2. MASTER AND SERVANT ⬅➡321—OWNER'S DUTY TO EMPLOYÉ OF INDEPENDENT CONTRACTOR.
   The owner of property on which an independent contractor was to do work, under contract requiring the contractor to furnish his own appliances, owed no duty to the contractor's employés in gratuitously furnishing an appliance to the contractor, except not to knowingly furnish an improper or defective appliance.

3. MASTER AND SERVANT ⬅➡332(3)—INJURY TO EMPLOYÉ OF INDEPENDENT CONTRACTOR; EVIDENCE OF OWNER'S KNOWLEDGE OF DEFECT.
   Relative to liability for the killing of employé of independent contractor for painting building, by breaking of rope for suspending the scaffold gratuitously furnished by owner's superintendent, who knew the weakening effect on such rope of the acid in the building, held, the evidence made his knowledge of it being an improper rope for such use one for the jury; the fact of it being taken from a pile of ropes stored in the corner authorizing inference that it had been there an appreciable time, and a showing of knowledge of exact percentage of impairment not being necessary.

4. MASTER AND SERVANT ⬅➡302(2)—INJURY TO EMPLOYÉ OF INDEPENDENT CONTRACTOR; IMPLIED AUTHORITY OF OWNER'S LOCAL SUPERINTENDENT.
   From the fact that a building of defendant corporation was being painted under a contract signed by its local superintendent, and that he had no local superior, it can be found that he was acting within his im-

⬅➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

plied authority, when objecting to the method of swinging the scaffold, as injurious.to the building, and suggesting another method, he gratuitously furnished to the independent contractor a rope therefor, which by reason of defect therein broke, killing contractor's employé.

5. MASTER AND SERVANT ⊜⟿318(1)—INTERFERENCE BY OWNER WITH INDEPEND-
ENT CONTRACTOR.
    Under Civ. Code Ga. 1910, § 4415, subsec. 5, an independent contractor and his employés become employés of the owner by interference of the owner with the method or means of doing the work, resulting in injury to,an employé of the contractor.

6. MASTER AND SERVANT ⊜⟿189(2)—VICE PRINCIPAL AND NOT FELLOW SERVANT.
    A corporation's local superintendent of its plant, with no local superior, is not a fellow servant of an employé painting the building, but a vice principal, for whose fault, resulting in injury to the employé, the employer is liable.

In Error to the District Court of the United States for the Southern District of Georgia; Beverly D. Evans, Judge.

Action by Mrs. Eva Slappey against the International Agricultural Corporation. Judgment for plaintiff, and defendant brings error. Affirmed.

Marion Smith, of Atlanta, Ga., M. D. Jones, of Macon, Ga., Miller & Jones, of Macon, Ga., R. L. Maynard of Americus, Ga., and Little, Powell, Smith & Goldstein, of Atlanta, Ga., for plaintiff in error.

Hixon & Pace, Shipp & Sheppard and J. E. Sheppard, all of Americus, Ga., for defendant in error.

Before WALKER, Circuit Judge, and FOSTER and GRUBB, District Judges.

GRUBB, District Judge. The plaintiff (defendant in error) is the widow of Ernest Slappey, and brings this suit to recover damages for his death, which occurred July 3, 1917, at Americus, Ga. The plaintiff recovered a judgment against the defendant in the District Court, and from that judgment this writ of error is taken.

The decedent at the time of his injury and death, was an employé of one Gammage, who was painting the plant of defendant, under a contract by the terms of which Gammage was to furnish "all tools and tackle necessary to the satisfactory completion of said work," and agreed "to assume all liability for injury to himself, his workmen, or damage to property." It is conceded that Gammage occupied the relation of an independent contractor to defendant, under the terms of the contract. The local superintendent, during the progress of the work, objected to Gammage's act in fastening a scaffold to the roof of the defendant's plant, and suggested that he arrange the scaffold in another manner, which required the use of a rope. Gammage told Parker, the defendant's superintendent that he did not have a rope. The superintendent then agreed to and did furnish Gammage a rope. Gammage used the rope, so furnished, to rig up the scaffold, as suggested by Parker. Gammage and the deceased worked on the scaffold after it had been rigged up during the morning. After the lunch hour they again went back to work on it, and shortly thereafter the rope

broke, precipitating both a distance of 80 feet to the ground, and the decedent was killed. It was conceded that the accident was due to a defect in the rope, and that the method of rigging was safe, if the rope had been sufficient. The rope had been weakened by the action of acid to which it had been subjected in the defendant's plant. There was an issue of fact as to whether or not Parker furnished the rope to Gammage, which was resolved against the defendant by the jury.

[1] The only error assigned and relied upon here is the refusal of the District Judge to direct a verdict for the defendant. We are therefore justified in assuming the truth of the evidence of the plaintiff. The plaintiff in error supports its contention that a verdict should have been directed in this way:

(1) That the defendant was under no duty to the employés of an independent contractor, charged with the duty of furnishing his own appliances, and to whom an appliance was gratuitously furnished, except that of not knowingly or intentionally furnishing a defective appliance.

(2) That there was no evidence in the record to show that the defendant's superintendent, Parker, when he furnished Gammage the rope, if he did so, knew of its defective condition.

(3) If Parker did furnish the rope, his act in doing so must be regarded as his individual act, and not one done within the scope of his employment as an agent of the defendant, and hence not the act of the defendant.

(4) If Parker furnished a defective rope to Gammage, to be used by him and decedent, and if his act in doing so was within the scope of his employment, still he was a mere fellow servant of decedent, if decedent was a servant of defendant, for whose negligence defendant was not responsible.

[2, 3] 1 and 2. The duty of one to the employés of another, who occupies the relation of independent contractor to the first, under a contract which imposes the duty upon the contractor to furnish his own working appliances, is, in case the first gratuitously furnishes appliances to the contractor, only not to knowingly furnish improper or defective appliances. Unless there is evidence in the record tending to impute knowledge of the defect in the rope to Parker, when, if at all, he furnished it to Gammage, the plaintiff was not entitled to go to the jury, if Gammage was an independent contractor. The plaintiff in error insists that the record contains no evidence tending to fasten knowledge on Parker of the weakened condition of the rope. There is evidence in the record tending to show that Parker got the rope from a pile of ropes in the corner of one of the buildings of defendant's plant, when he got it for Gammage, and that he knew it must have been exposed to the action of acid. Parker himself testified that he knew of the weakening effect of acid on rope of this character. It also appeared that the weakness was not discernible from the appearance of the rope. The contention of the plaintiff in error is that the record fails to show how long the rope had been subjected to acid before Parker got it and gave it to Gammage, within the knowledge of Parker, and how long

it would take the acid to weaken the rope after exposure to it, and whether or not Parker knew this necessary time of exposure.

The plaintiff in error contends that, the burden being on the plaintiff to show knowledge, she was required to show all these facts. From the way in which the rope was testified to have been stored in the corner of the building, in a pile with other ropes, the jury might have presumed that it was taken from an accustomed place of storage of rope and that the defective rope had been there for an appreciable time before Parker got it. The jury might have inferred its continuance in that position long enough for it have been weakened by the acid, and that Parker, knowing these facts, also knew of its weakened condition. It should require very little proof to sustain the burden, in view of the fact that the evidence tended to show that Parker knew the rope had been exposed to the acid, and of its effect, and of the impossibility of telling, from its appearance, the extent of injury done by the acid, and in view of the dangerous use to which he knew the rope was to be devoted. Knowledge that it had been exposed to an acid, which would likely weaken it, was knowledge that it was an improper rope for use for the support of men 80 feet above the ground. A showing of knowledge of the exact percentage of impairment was not necessary. His knowledge that it had been exposed to a weakening agency was enough. His knowledge or want of knowledge was therefore a question for the jury.

[4] 3. Plaintiff in error also contends that Parker's act was not the defendant's; that it amounted to a modification of the contract, because the contract required the contractor to furnish his own appliances, which Parker was not authorized to make. Parker signed the written contract for the defendant. That may not of itself have given him authority to change its terms. It was a circumstance tending to show the extent of his authority. He was the only person in charge of the defendant's plant on the ground. His nearest superior was in Atlanta, the plant being at Americus. As he was in sole charge of the premises, he had authority to prevent injury to them. This gave him the right to object to the method of swinging the scaffold to the roof. It is contended that, when he went a step further, and suggested a different method, and furnished the rope necessary to do the work in the way he suggested, he exceeded his authority. However, it was in the line of his duty to see that the painting was done, and done in a way not to deface the building. This gave him the implied authority to suggest an alternative way of doing the work, with that end in view, and he acted for the defendant in making the suggestion and in furnishing the rope, or it was open to the jury to so find. If this were not true, then no one nearer than Atlanta could have acted for the defendant in so minor a detail of conducting the work under the contract. It is inconceivable that this should be the law. If Parker knowingly furnished a defective rope, his doing so imposed liability on the defendant, and this without requiring a change in the contract, since even under it the defendant, though under no duty to furnish the rope, was legally responsible if it gratuitously furnished a defective one with knowledge.

[5] 4. Section 4415 of the Code of Georgia (fifth subsection) sets

forth the instances in which the employés of an independent contractor become employés of the owner. It imposes liability on the employer "if the employer retains the right to direct or control the time and manner of executing the work, or interferes and assumes control, so as to create the relation of master and servant, or so that an injury results, which is traceable to his interference." The interference is not required to be with the contractor's employés directly, but may also concern the method or means of doing the work, and may be brought about by directions given by the owner to the contractor, as well as to his men. The section is only declaratory of the common-law principle that the reservation in the contract of a right to control the means and details of the work makes the contractor and his men employés of the owner. If the jury believed the plaintiff's evidence, they were authorized to find from it that Parker interfered with the means and method of doing the painting in a way that would establish the relation of employer and employés between the defendant and Gammage and his men, at least to the extent of the interference, and notwithstanding the terms of the written contract, and that to this interference the accident that killed decedent was traceable.

[6] If the decedent was an employé of the defendant, Parker was not a mere fellow servant. He was a superintendent of its local plant, with no superior in Americus. The department of the defendant represented by the Americus plant was under his supervision exclusively, except for absentee supervision at Atlanta. Of necessity, all matters requiring instant decision were for Parker to decide. Parker was either vice principal of the defendant at Americus or it had none there. It is not conceivable that it could operate a plant without a resident vice principal. Parker, having been placed by the defendant in complete local charge of the department represented by its Americus plant, was a vice principal of the defendant, for whose fault it would be liable to the decedent, if the decedent was an employé of the defendant. Moss v. Gulf Compress Co., 202 Fed. 657, 121 C. C. A. 67.

The case was properly submitted to the jury for decision, and the judgment is affirmed.