JOHN W. WALTERS, APPELLEE, V. CHICAGO GREAT WESTERN
RAILROAD COMPANY ET AL., APPELLANTS.

FILED OCTOBER 16, 1915.   No. 18306.

1. Master and Servant: INJURY TO SERVANT: ASSUMPTION OF RISKS.
A servant assumes the ordinary risks and dangers incident to his
employment, which he knows or which by the exercise of ordinary
care a person of his age, experience and capacity, under the cir-
cumstances, should have known.

2. ———: ———: ACTIONABLE NEGLIGENCE.   An employer's direc-
tion to an employee to hurry is not actionable negligence, where
it does not tend to subject him to a hazard not ordinarily incident
to his employment, or to inspire fear, or to confuse, excite or dis-
tract him, or otherwise to prevent him from exercising ordinary
care for his own safety.

APPEAL from the district court for Douglas county:
GEORGE A. DAY, JUDGE. *Reversed with directions.*

W. D. *McHugh,* W. H. *Herdman* and *Smyth, Smith &
Schall,* for appellants.

J. W. *Woodrough* and *McLaughlin & Neely, contra.*

ROSE, J.

Plaintiff fell on the floor of a railway freight car, while
unloading wall-paper, and this is an action to recover re-
sulting damages in the sum of $15,000 for personal in-
juries.   At the time of the accident the car stood on a sid-
ing in the Omaha freight yards of the Chicago Great West-
ern Railroad Company.   It is charged that the carrier neg-
ligently delivered the consignment of wall-paper in a box
car with a loose, sliding door, through which snow filtered,
thus making the floor slippery and dangerous.   Plaintiff
was in the employ of the consignee, Yetter & Company, a
corporation, and he alleges that his employer negligently
ordered him, without warning, to hurry into the car, when
he had no knowledge of his peril.   The carrier and the
employer are defendants.   Both denied negligence, and al-

leged that plaintiff had assumed the risks of his employment. The jury rendered a verdict in favor of plaintiff and against both defendants for $7,500. The latter appealed. After the appeal had been docketed, plaintiff confessed that the judgment against the Chicago Great Western Railroad Company was erroneous, and in that respect it was reversed. The remaining controversy here is between plaintiff and his employer, Yetter & Company.

The decisive point on appeal is the sufficiency of the evidence to sustain the verdict. The judgment rests on the testimony of plaintiff. It may be summarized as follows: He was employed March 12, 1912, by Yetter & Company, and worked under the direction of Merwin E. Vernon, foreman. The car of wall-paper was delivered to that corporation by the Chicago Great Western Railroad Company. It stood on a side-track running east and west in the carrier's Omaha freight yards ready to be unloaded at a door on the south side. Before noon, March 13, 1912, the foreman, accompanied by plaintiff, backed a dray up to the car door; the floor of the dray being practically on the same level as that of the floor of the car. The door did not fit closely, and between it and the rolls of wall-paper, which had been loaded with the ends to the door, snow had collected. Plaintiff swept out the snow. The wall-paper had been packed in bales, each weighing 25 pounds or more, plaintiff and the foreman carrying them from the car to the dray. Together they delivered a dray load at the employer's warehouse in Omaha. They spent the afternoon at work in the same manner, and closed the car for the night. They took a dray load from the car to the warehouse before noon the next day, and closed the car door. When they returned to work in the afternoon there was no snow in the car, the floor of which was covered with a thick, heavy, glazed paper with a sleek surface. Up to that time plaintiff could walk in the car as well as on the floor of the court-room. After the wall-paper had all been moved from the car except one dray load, and while plaintiff and the foreman were absent from the closed car on a trip to the warehouse, snow fell, with the wind in the

southeast. They returned for the last dray load about 5 o'clock. In their absence the wind sifted snow into the car at the lower west corner of the closed door and deposited it on the floor in a northwesterly direction. While plaintiff was adjusting a tarpaulin in the front end of the dray the foreman opened the car door. Plaintiff was told to hurry to avoid the expense of demurrage. He hastened into the car after the foreman, and what followed is stated by him in these words: "I walked to the west end of the car and got a bundle of paper, and I had it and carried it into the wagon and placed it in the front end, and as I came back and turned the corner away from the door towards the west end my feet slipped out from under me and I fell and received an injury to my hip and thigh." He further testified that it was about 5 o'clock when he slipped and fell; that the day was cloudy; that he did not see the snow in the car or know it was there until after he had fallen; that when he first stepped into the car he could see the outlines of the bundles in the west end.

The substance of the argument justifying the inference of actionable negligence on the part of the employer appears in the brief of counsel as follows: "The circumstances under which plaintiff was injured demonstrate conclusively that his falling upon the snow in the dark car was not his fault. It was the fault of the boss who ordered him to hasten into the car without in anywise calling his attention to the dangerous condition which had been created in the car during plaintiff's absence. The danger of this condition was obvious to Vernon when he was getting the door of the car open and before he gave his reckless order to the plaintiff to hurry into it. There is no shadow of doubt but that plaintiff owes his injuries entirely to this reckless and careless order given him by Vernon."

Is the position thus taken tenable? Plaintiff was an able-bodied man of mature years and of at least ordinary intelligence. There is nothing in the record to indicate that he was handicapped by any mental or physical infirm-

98Neb.50

ity. In determining the employer's duty to plaintiff, therefore, the latter is chargeable with what he actually knew of existing conditions, as well as with what he could have observed by the exercise of ordinary care for his own safety under the circumstances, unless his employer misled or neglected him to his injury. The situation under which plaintiff performed his duties was very simple. He knew the condition of the floor, in the absence of snow, because he had seen it and had walked in and out of the car many times. He knew the car would not keep the snow out, because he had swept snow out of it. He knew snow had fallen during his absence, because he was out in it and had brought and adjusted a tarpaulin to protect the wallpaper when loaded into the dray. He knew the wind was blowing from the southeast and its effect upon falling snow. Though he testified he did not know there was snow in the car, should he, in the exercise of ordinary care, under the circumstances, have known it? According to the undisputed evidence the accident occurred more than an hour before sunset. The door of the car was open at the time, and he fell about 18 inches from the entrance. The color of the paper on the floor was brown, and the white snow upon it was obviously conspicuous by contrast. The line of snow which had sifted into the car commenced at the lower west corner of the open doorway. In the west end of the car, where it was darker, plaintiff could see the outlines of the bales of wall-paper. With the conditions as thus described, plaintiff, without mishap, had already gone into the west end of the car and had taken out a bundle of paper. His means of observation were the same as those of the foreman, unless the latter was negligent or misled him in some respect. Was the order to hurry negligent, under the circumstances? It was not given at the time of, or immediately before, the accident. It was given when both men were in the dray. In the meantime both had gone into the car and had returned to the dray in safety. There is nothing to indicate that plaintiff was confused or excited by the direction to hurry, or that he was seized by

a fear of losing his position, or that he was prevented from exercising ordinary care for his own safety.

In discussing the effect of directing a servant to hurry, the court of appeals of Missouri said: "Now, as a general proposition, the master, the superior servant, or vice-principal, may give such usual and customary orders in and about the business he is prosecuting and within the scope of the employment as are essential to induce a prompt and attentive discharge of the duties imposed by the contract of service without breaching the obligation to exercise ordinary care for the safety of the servant. A mere order to hurry or to be quick in the performance of labor in and of itself is not negligence. Such, generally speaking, is a usual and proper exercise of authority. *Coyne v. Union Pacific R. Co.*, 133 U. S. 370; *Ruchinsky v. French*, 168 Mass. 68; *Herold v. Pfister*, 92 Wis. 417. Indeed, on this question the authorities go to the effect that a mere order to hurry up with the task is not negligence unless it tends to subject the party to an extraordinary hazard; that is, a hazard not ordinarily incident to the employment, or operates to excite, distract or disconcert the employee to such an extent as renders him unable to exercise due care for his own safety. *Sambos v. Cleveland, C., C. & St. L. R. Co.*, 134 Mo. App. 460, 467; *Saller v. Friedman Bros. Shoe Co.*, 130 Mo. App. 712." *English v. Roberts, Johnson & Rand Shoe Co.*, 145 Mo. App. 439.

In the present case there is nothing in the evidence to indicate that the foreman had any reason to suspect plaintiff would not see the snow on the glazed surface of the floor or fail to use ordinary care to avoid injury. Since the conditions resulting in the accident were open and obvious, since they were brought about by the operation of familiar natural laws, of which plaintiff was required to take notice, since there was no duty on the part of the employer to give warning of the danger, since the plaintiff was not misled or neglected by his employer, since the undisputed evidence shows that the exercise of ordinary care on the part of plaintiff, under the circumstances, would have re-

sulted in his observing existing conditions and danger, he will not be permitted to establish actionable negligence on the part of his employer by testifying that he did not see the dangerous condition, but that his employer did and failed to warn him of it.

A text-writer said: "There are, it may be supposed, very few trials in which the servant does not swear that the risk was unknown to him. Due weight is attached to this consideration; for, taking the cases as they stand, it seems permissible to say that such a denial is treated as being a merely corroborative element which furnishes an additional justification for a conclusion in itself not unwarrantable even if that element were abstracted. * * * Both on principle and authority it is indisputable that, if the servant's testimony is contrary to all probability when the rest of the evidence is considered, it may be disregarded by a court of review." 4 Labatt, Master & Servant (2d ed.) sec. 1309.

While plaintiff's injuries and resulting condition appeal to human sympathies, the judgment in his favor is without support in the evidence. It is therefore reversed, with a direction to the trial court to dismiss the action.

REVERSED.

FAWCETT and HAMER, JJ., not sitting.