### HESKETT v. PENNSYLVANIA CO.

(Circuit Court of Appeals, Sixth Circuit. October 2, 1917.)

No. 3004.

1. MASTER AND SERVANT &⟶110—INJURIES TO SERVANT—STATUTE.

Under Gen. Code Ohio, § 8951, forbidding common carriers to haul a locomotive not provided with secure grabirons or handholds in the sides and ends thereof, a railroad company is guilty of negligence, where it operated an engine on the pilot of which a turtleback or iron bar had been placed, which rendered it impossible to use the handholds.

2. MASTER AND SERVANT &⟶286(5), 289(1)—NEGLIGENCE &⟶97—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE.

Gen. Code Ohio, § 9018, declaring that, in actions brought against a railroad company for personal injuries to an employé, the fact that the employé was guilty of contributory negligence shall not bar recovery, when such negligence was slight and that of the employer great, but that damages must be diminished, and that all questions of negligence and contributory negligence shall be for the jury, abolishes the common-law rule of contributory negligence as an absolute bar, and adopts the rule of comparative negligence, making the questions whether the railroad employé's negligence was slight as compared with that of the company, as well as the comparative degrees of negligence, jury questions.

3. MASTER AND SERVANT &⟶293(13)—INJURIES TO SERVANT—INSTRUCTIONS—PROPRIETY.

Plaintiff, a railroad section hand, suffered injuries when he attempted to board a moving engine, and in an action for such injuries contended that they resulted from the negligence of the company in placing a heavy iron bar or turtleback on the pilot of the engine, which prevented him using the handholds. The court charged that, if plaintiff was warned before the accident not to attempt to get on trains or engines in motion, then under the circumstances with respect to the speed of the engine and the small space between the engine and the car, where plaintiff

stated he attempted to board the engine, plaintiff could not recover, though the railroad company was negligent as claimed, because having warned him not to board moving train, the company was under no duty to make conditions safe for him. *Held*, that the instruction, which must be interpreted as relating solely to the railroad company's negligence, was proper only if the warning to plaintiff amounted to an actual and subsisting prohibition against boarding a moving train, and where the evidence showed that, though section hands, including plaintiff, were warned not to board moving trains, nevertheless their superiors acquiesced in their boarding moving trains, and did not stop trains which used to carry such employés to and from their work, the instruction was improper, tending to mislead the jury, for a railroad company cannot prohibit employés from boarding moving trains and at the same time permit them to do so, and escape responsibility.

4. MASTER AND SERVANT ☞244 (3)—INJURIES—NEGLIGENCE.
   A railroad employé, who boarded a moving train in violation of mere warnings, is guilty of only contributory negligence, and unless the warnings amounted to a prohibition the company's negligence in equipping an engine, which contributed to the injury, furnishes basis for recovery.

In Error to the District Court of the United States for the Northern District of Ohio; John H. Clarke, Judge.

Action by William Heskett against the Pennsylvania Company. There was a judgment for defendant, and plaintiff brings error. Reversed and remanded, with directions to grant new trial.

Anderson, Matthews & Wall, of Youngstown, Ohio, for plaintiff in error.

Arrel, Wilson, Harrington & De Ford, of Youngstown, Ohio, for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge.   Plaintiff in error, who was plaintiff below, was in the employ of defendant in error as a member of a special section gang of 20 to 30 men engaged in resurfacing track and making fills with slag, which was hauled for the purpose on cars drawn by a yard engine operated by a regular crew; the engine being provided at both the tender and pilot ends with footboard and grabirons or handholds. For the purpose of riding to dinner at the camp maintained by the railroad company, plaintiff attempted to step on the footboard on the front or pilot end of the engine, which was then moving, tender foremost, at a speed of 8 to 12 miles an hour and hauling six empty cars; he missed either his footing or his handhold, fell under the cars, and lost a leg.

Plaintiff claims that the accident was due to the negligent presence on the pilot, unknown to him, of a "turtleback"[1] which so protruded over

---

[1] A turtleback is described as a channeled and flanged piece of iron, about 3 feet long and 6 inches wide, tapered down at each end and higher in the center, weighing from 50 to 150 pounds, and used for rerailing cars.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the footboard and handhold as to contact with plaintiff's hand, preventing his grasping the handhold, and causing him to lose his balance.

Defendant denied that there was a turtleback on the pilot, gave evidence tending to show that plaintiff's fall was due to stumbling when trying to mount the footboard, and that his attempt to mount the moving train was in disobedience of express instruction to the contrary, which disobedience directly and proximately caused the accident; also pleading that plaintiff was guilty of contributory negligence in attempting to board the moving engine in the manner adopted and under the existing conditions.

At the conclusion of the testimony on the trial the jury was instructed that (in the absence of warning to plaintiff not to get on moving trains or engines) it was defendant's duty to keep the handhold accessible, and it would be liable for permitting the turtleback to be so laid upon the pilot as to cause plaintiff's accident, through his inability to seize the handhold, and that in such case, if plaintiff's negligence was slight and that of the defendant greater in comparison, the damages must be diminished in proportion to the amount of negligence attributable to plaintiff.

The court further charged, however, that:

·If plaintiff was warned before the accident, "as the defendant claims," not to attempt to get upon trains or engines when in motion, "then, under the circumstances shown in this case with respect to the speed of the engine and the small space between the engine and the car, where [plaintiff] says he attempted to mount the engine, the plaintiff would not be entitled to a verdict in his favor even if the railroad company was negligent, as he claims that it was, because having warned him not to attempt what he did attempt to do, the company was under no legal duty to make conditions safe for him if he violated that warning."

Defendant had verdict and judgment. The only question before us concerns the correctness of this latter instruction.

[1, 2] The instruction was proper only upon the theory that defendant owed plaintiff no duty to keep conditions on the pilot safe for plaintiff, and was thus not itself negligent. The accident happened in Ohio. Section 8951 of the General Code forbids a common carrier to haul a locomotive "not provided with secure grabirons or handholds in the sides and ends thereof"; and we have no doubt that making the handhold inoperative by carrying a turtleback on the pilot is within the statute. See by analogy United States v. Illinois Central R. R. Co. (C. C. A. 6) 177 Fed. 801, 101 C. C. A. 15. Plaintiff's contributory negligence did not necessarily bar recovery. Section 9018 of the General Code of Ohio provides that:

In actions brought against a railroad company for personal injuries to an employé the fact that the latter is "guilty of contributory negligence shall not bar a recovery when such negligence was slight and that of the employer greater, in comparison. But the damages must be diminished by the jury in proportion to the amount of negligence attributable to such employé. All questions of negligence and contributory negligence shall be for the jury."

This statute abolished the common-law rule of contributory negligence as an absolute defense in bar, and adopts the rule of comparative

negligence, in cases where the negligence of the plaintiff is slight and that of the defendant greater in comparison.[2]

The questions whether plaintiff's negligence was slight as compared with that of defendant, as well as of comparative degrees of negligence, were for the jury (Lewis v. P., C., C. & St. L. Ry. Co., supra; Sherman v. T. & O. C. Ry. Co., 25 O. C. D. 449, 453, affirmed 88 Ohio St. 617, 106 N. E. 1083); as was also the question of proximate cause (Erie R. R. Co. v. White, 187 Fed. at page 559, 109 C. C. A. 322; Hales v. Mich. Central R. R. Co. [C. C. A. 6] 200 Fed. 533, 537, 118 C. C. A. 627).

Should we take judicial cognizance of the fact that defendant was engaged in interstate commerce, and the Federal Safety Appliance Act (Act March 2, 1893, c. 196, 27 Stat. 531 [Comp. St. 1916, §§ 8605–8612]) thus exclusively applicable (Texas & Pacific R. R. Co. v. Rigsby, 241 U. S. 33, 37, 41, 36 Sup. Ct. 482, 60 L. Ed. 874), the situation, under familiar rules, would be even more favorable to plaintiff, so far as the defense of contributory negligence is concerned.

[3, 4] But we construe the criticized instruction as not intended (as plaintiff in error regards it) to relate to the subject of plaintiff's negligence, which was elsewhere properly treated, but only to defendant's negligence, although considerations of speed of train and small space between engine and car, mentioned by the court, related only to that subject. In its instructions concerning the alleged warning, the court rightly disregarded an alleged general rule of defendant prohibiting the mounting of moving cars, for lack of evidence of its applicability to members of the section gang in question.

We think the criticized instruction was proper, provided the warning referred to amounted to an actual and subsisting prohibition, so understood by plaintiff, against mounting a moving train. If it fell short of that, its disregard would be at most merely contributory negligence. We are not satisfied that the jury would naturally understand the instruction as relating to an actual prohibition of that character. While there was express testimony that the members of the work gang generally, including plaintiff, had been warned by the section foreman and the train conductor every morning (including the morning of the day of the accident) not to attempt to get on or off a moving train, it was not only undisputed that the men were permitted to ride on the cars between the camp and the place of work (the foreman testifying, "Of course they ride on the train going to and from their work"), the only limitation being the asserted warning—not conceded, but denied—against getting on or off the cars when in motion; but there was also substantial testimony that the members of the work gang were in the habit of getting on and off the moving trains for the purpose of riding between the camp and the place of work, without objection or protest from the

[2] Lewis v. P., C., C. & St. L. Ry. Co., 89 Ohio St. 9, 13, 104 N. E. 1002; Erie R. R. Co. v. White (C. C. A. 6) 187 Fed. 556, 558, 109 C. C. A. 322; Erie R. R. Co. v. Kennedy (C. C. A. 6) 191 Fed. 332, 335, 112 C. C. A. 76; Standard Steel Tube Co. v. Prusakicueicz, 23 O. C. D. 133, 136, affirmed 87 Ohio St. 472, 102 N. E. 1131.

foreman or conductor; that the train never stopped for the purpose of letting the men on or off, the foreman telling them to "just pile on the best you can." The testimony would support a. conclusion that the alleged warnings were never enforced, but were habitually disregarded, with the apparent acquiescence and implied approval of the officers whose duty it was to enforce them—the foreman even admitting that he himself sometimes got off and on the train when in motion. But even if the proof fell short of an inference that the conductor so approved, a warning by the gang foreman would, under the instruction, bar recovery.

Moreover, to warn does not necessarily mean to "forbid"; it may mean only to "caution" or "admonish."

In fact the foreman said at one point in his testimony:

"I had seen the men getting on and off the moving cars previously lots of times, but I always warn them when going on the main track to be very careful about getting on and off moving cars when they were on the main track."

But, whatever may be the definition of the word "warn," a railroad company cannot categorically prohibit, and at the same. time constantly permit, its employés to mount moving cars and still escape responsibility. Spaulding v. Railroad, 98 Iowa, 205, 211, 67 N. W. 227; No. Pacific R. R. Co. v. Nickels (C. C. A. 8) 50 Fed. 718, 722, 1 C. C. A. 625; Knickerbocker Ice Co. v. Finn (C. C. A. 2) 80 Fed. 483, 25 C. C. A. 579; Eastman v. Railroad Co., 101 Mich. 597, 602, 60 N. W. 309; Railroad Co. v. Reagan, 96 Tenn. 128, 139, 140, 33 S. W. 1050. In this state of the testimony, an unqualified instruction relieving the defendant, as matter of law, from all liability in case the claimed warning had been given, was, in our opinion, erroneous; for we think the jury may not unreasonably have understood it as forbidding recovery from the mere fact of verbal warning at any previous time, regardless of the question of defendant's implied permission to the contrary.

For this reason the judgment must be reversed, and the cause remanded to the District Court, with directions to award a new trial.