## E. I. DU PONT DE NEMOURS & CO. v. KELLY.

(Circuit Court of Appeals, Fourth Circuit. July 15, 1918.)

No. 1619.

1. MASTER AND SERVANT ⚖284(3)—INJURY—QUESTIONS FOR JURY.
   On conflicting evidence in servant's action for injury from fall of scaffold, whether he was required to go on it in the course of his employment held for jury.

2. MASTER AND SERVANT ⚖286(17)—DEFECTIVE SCAFFOLD—JURY QUESTION.
   Whether a master was negligent in the construction of a scaffold from which a servant fell and was injured held for the jury.

3. MASTER AND SERVANT ⚖289(19)—CONTRIBUTORY NEGLIGENCE—KNOWLEDGE OF DEFECTS—QUESTION FOR JURY.
   Whether a servant knew of defects in a scaffold and was negligent in using it held for the jury.

4. MASTER AND SERVANT ⚖235(4)—INJURY—SCAFFOLD—RIGHT TO ASSUME PROPER CONSTRUCTION.
   Servant, required to work on scaffold, had right to assume it was properly constructed.

5. EVIDENCE ⚖419(20)—PAROL EVIDENCE—RELEASE—CONSIDERATION.
   Oral testimony of master, in support of written release by servant of claim for injury in consideration of $5, that statutory benefits for injured employés were promised, was in direct conflict with writing, and so unavailing.

6. RELEASE ⚖55—CONSIDERATION—PRESUMPTION.
   A consideration of only $5 for a release of claim by an employé seriously injured raises the presumption of imposition.

7. COMPROMISE AND SETTLEMENT ⚖23(3)—EVIDENCE.
   It being inferable that half pay allowances by master to injured servant while disabled were made as a mere kindness, failure of employé to return the money was not conclusive of acceptance thereof in whole or partial satisfaction of claim.

8. TRIAL ⚖260(1)—INSTRUCTIONS—REQUESTS COVERED.
   All the issues being fully and accurately covered by the charge, requested instructions need not be given.

In Error to the District Court of the United States for the Eastern District of Virginia, at Richmond; Edmund Waddill, Jr., Judge.

Action by Eugene P. Kelly against E. I. Du Pont de Nemours & Co. Judgment for plaintiff, and defendant brings error. Affirmed.

Charles E. Plummer and J. Gordon Bohannan, both of Petersburg, Va., for plaintiff in error.

L. O. Wendenburg, of Richmond, Va., for defendant in error.

Before KNAPP and WOODS, Circuit Judges, and SMITH, District Judge.

⚖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WOODS, Circuit Judge. The plaintiff, a carpenter, while employed by the defendant, fell from a scaffold and was seriously injured. In a declaration containing 5 counts, and covering 8 closely printed pages, the fall is alleged to have been due to the breaking of the scaffold, because (1) the supports of the board from which plaintiff fell were too weak, and (2) the brackets which supported the boards were so defectively constructed that the board on which plaintiff was walking crept away from its support and fell; and on this negligence is charged to the defendant (1) in not providing its employé a reasonably safe place to work, and (2) in not making a reasonable inspection of the support.

By an answer containing 15 paragraphs the defendant sets up (1) general denial; (2) contributory negligence; (3) assumption of risk; (4) negligence of fellow servant; (5) discharge by written release for a valuable consideration. The plaintiff recovered judgment, and the case comes here on 25 assignments of error, based on an equal number of exceptions.

There was no error in refusing the motion to direct a verdict made on the grounds: (1) The plaintiff was not required to go on the scaffold in the performance of his duties as an employé, and went there without the knowledge or consent of the defendant; (2) no actionable negligence on the part of the defendant was proved; (3) plaintiff assumed the risk of his employment; (4) plaintiff was guilty of contributory negligence; (5) plaintiff released all his rights against the defendant.

[1-4] According to plaintiff's evidence, he worked under one Crowder as his "walking boss." Crowder, on the day of the accident, directed him to obey orders of one Davis. Davis ordered him to go on the scaffold and get a chalk line left there. While he was on the scaffold in obedience to this order the plank on which he was standing fell. The evidence on behalf of the defendant that the plaintiff was not put under the orders of a man named Davis, and that no employé named Davis could be found to testify that he ordered plaintiff to go on the scaffold, made a strong showing in support of the defendant's contention that plaintiff was not required to go on the scaffold in the course of his employment, especially in view of the plaintiff's rather confused testimony on the subject. Nevertheless, taking all the evidence together, an issue of fact on this point was made for the jury.

The next issue was whether the defendant had constructed a scaffold, which the foreman as well as the plaintiff had the right to assume was reasonably safe to work on, so negligently that it fell from plaintiff's weight. There was abundant evidence that plaintiff fell because the scaffold was negligently constructed. He had the right to assume that it was properly constructed. There was evidence that he did not know of the faulty construction, and there was no conclusive evidence that the faulty construction was so obvious that plaintiff should have observed it and refused to go on the scaffold.

We find in the record no evidence of contributory negligence; but,

if there was, it certainly was not a sufficient basis for the contention that no issue was left for the jury.

[5, 6] The paper under seal, relied on as a release, expressing a consideration of $5, purported to release defendant in this language:

"I hereby release and forever discharge said company from any and all actions, causes of action, claims, and demands for, upon, or by reason of any damage, loss, or injury, of whatsoever kind or nature, which heretofore has been, or which hereafter may be, sustained by me in consequence of such accident or injury. It is agreed that said payment is made in full settlement, compromise, and satisfaction of any claim arising from the aforesaid accident or injury, and is not to be construed as an admission on the part of said company of any liability whatsoever on account thereof."

In support of the release, one Ralph Derr, an employé of defendant who took it, testified that at the time it was taken he, as agent of the defendant, orally promised the plaintiff the benefits receivable by injured employés under the New Jersey statute (Act April 4, 1911 [P. L. p. 134], as amended by Act April 1, 1913 [P. L. p. 302]), and thus substituted by agreement this statutory liability for any common-law liability. This oral testimony that the liability provided by the statute of another state should be substituted for any common-law liability was in direct conflict with the written instrument, which was in terms an absolute release, and therefore it was unavailing to support the claim of substituted liability. Smith Lumber & Manufacturing Co. v. Parker, 224 Fed. 347, 140 C. C. A. 33, and authorities cited.

Derr testified that he had no authority to alter the form of the release as printed. If his testimony is to be taken, it leads to the inference that the purpose of the defendant was to bind the injured employé by a written release while refusing to bind itself to a consideration, except by the loose oral statement of a subordinate employé. Indeed, the defendant failed to show even that Derr had oral authority to undertake to alter the written release by an oral agreement to substitute the liability provided by the New Jersey statute for the common-law liability; for according to the testimony his authorization from the E. I. Du Pont de Nemours Powder Company expired when the business was taken over by the defendant company. Derr could not testify with certainty that when the business was taken over he had received any authority from the defendant to make the substitute liability. We have, then, a release presented by the defendant, taken from a man seriously injured on the head, for the consideration of $5, which consideration was not enlarged by any obligation binding on the defendant. This inequality in the entire transaction was itself sufficient to raise, not only the question of fraud, but the presumption of imposition.

There was no such ratification by the plaintiff of the release as to bind him, or by the defendant of the oral agreement for liability in accordance with the New Jersey statute, testified to by Derr, as to bind it. There is nothing in the evidence from which it can be inferred that the plaintiff was ever informed by any one what would be the benefits under the New Jersey statute. Derr himself seems

not to have known. The evidence of Derr and others was to the effect that plaintiff was perfectly rational at the time he signed the paper; but the plaintiff himself testified that he was in such a weak mental state that he had no recollection of signing it, and that he did not know until after the suit was commenced that he had signed it.

[7] Further, the defendant did not, after the execution of the release and the alleged substitution of the liability fixed by the New Jersey statute, pay or in any way indicate an intention to pay for plaintiff's permanent disability according to the New Jersey statute. From this fact the jury might well infer that the defendant made the half pay allowances while plaintiff was disabled as a matter of kindness and not of obligation, and that the plaintiff so understood it until Derr testified on the trial. The failure of the plaintiff to return the payments made was not, under the circumstances, conclusive that he accepted them as satisfaction, or even part satisfaction, of his claim. Had counsel so requested, defendant would have been entitled to an instruction that the damages found should be credited with the payments made.

Negligence of a fellow servant was not involved, for there was no allegation and no proof that it was negligent to order the plaintiff to go on the scaffold. It follows that on none of the grounds presented would a directed verdict have been proper.

[8] The District Judge charged the jury fully and accurately in applying the familiar law to all the issues involved. His refusal to charge in the language of the requests, and with the elaboration desired by counsel, was not error.

Affirmed.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes