## PITTSBURGH, C., C. & ST. L. RY. CO. v. COLE.

(Circuit Court of Appeals, Sixth Circuit. July 8, 1919.)

No. 3234.

1. MASTER AND SERVANT ⊚⊸108—INJURIES TO SERVANT—PNEUMATIC HAMMER.
    An employer cannot discharge its duties by allowing employés to operate pneumatic hammers without safety springs.

2. TRIAL ⊚⊸178—MOTION FOR DIRECTED VERDICT—CONSIDERATION OF EVIDENCE.
    On motion for a directed verdict, it is the duty of the court to take that view of the evidence most favorable to the party not moving.

3. MASTER AND SERVANT ⊚⊸287(8)—VICE PRINCIPALS—WHO ARE.
    The question whether the leader of a gang of car repairers, who controlled them, but who himself was under the general foreman, was employer's vice principal, so that a member of the gang was bound to obey his orders, held, under the evidence, for the jury.

4. MASTER AND SERVANT ⊚⊸287(8)—INJURIES TO SERVANT—JURY QUESTION.
    In an action under the federal Employers' Liability Act (Comp. St. §§ 8657–8665), by a member of a gang of car repairers, who was hurt, while driving out a rivet with a pneumatic hammer without a safety spring, the question of the railroad's responsibility for a negligent order given by one in charge of the gang held, under the evidence, for the jury.

5. MASTER AND SERVANT ⊚⊸289(25)—INJURIES TO SERVANT—JURY QUESTION.
    In an action for injury to an eye of a steel car repairer, struck by a small piece of steel while driving out a rivet with a pneumatic hammer without a safety spring, the question whether the wearing of goggles, which were supplied, would have prevented the injury, held, under the evidence, for the jury.

6. NEGLIGENCE ⊚⊸101—FEDERAL EMPLOYERS' LIABILITY ACT—EFFECT OF CONTRIBUTORY NEGLIGENCE.
    Contributory negligence does not bar an action under the federal Employers' Liability Act (Comp. St. §§ 8657–8665), but only mitigates the damages.

7. NEGLIGENCE ⊚⊸119(6)—ISSUES—CONTRIBUTORY NEGLIGENCE—FEDERAL EMPLOYERS' LIABILITY ACT.
    In an action under the federal Employers' Liability Act (Comp. St. §§ 8657–8665), by a steel car repairer, injured while using a pneumatic hammer without safety springs, the action of the court in charging on contributory negligence, which issue was raised by the evidence, though not by the pleadings, held not erroneous, as it was unnecessary to the introduction of the issue through the evidence either to allege such negligence or present an issue on that subject in the pleadings.

8. MASTER AND SERVANT ⊚⊸288(12)—INJURIES TO SERVANT—ASSUMPTION OF RISK.
    In an action for injury to an eye of a steel car repairer, struck by a piece of steel while driving out a rivet with a pneumatic hammer without a safety spring to prevent the set from being driven from the hammer, the question of assumption of risk held, under the evidence, for the jury.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Action by Ellsworth G. Cole against the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company. There was a judgment for plaintiff, and defendant brings error. Affirmed.

Certiorari denied 250 U. S. 671, 40 Sup. Ct. 15, 64 L. Ed. ——.

⊚⊸For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Ellsworth G. Cole recovered judgment against the railway company in the sum of $5,000 for personal injuries sustained through alleged negligence of the company, and reversal is sought.

At the time the injuries were received, October 6, 1916, plaintiff and two others, Roy Dugan and W. H. Cole (plaintiff's brother), were in the company's employ as repairers of steel cars. This group of persons and other similar groups then working for the company were called "gangs," and there is testimony substantially tending to show that one member of each gang was treated by all concerned, including the company, as the leader, the superior in authority, of the particular gang with which he was associated, and that Roy Dugan acted in this capacity with respect to his gang, though, it is true, there was a general foreman of the steel car repair department, with an assistant foreman, also a gang foreman, who had charge of certain gangs working on steel cars. Thus the Dugan gang became an important object of inquiry at the trial.

When the accident occurred Dugan had been in the employ of the company some 11 months and the Cole brothers about 6 months. The work of this gang involved the use of an ordinary type of pneumatic hammer designed for riveting sheets of steel. Each of these hammers comprises a cylindrical barrel tapering toward the muzzle, with a grip handle and air connection at the rear end, and a plunger operating lengthwise through the greater portion of the barrel by means of compressed air. The hammers are provided with contrivances of different sizes, called "sets," each of which consists of a cylindrical head and shoulder, with a cylindrical extension fitting into the muzzle of the barrel and intended to be operated in connection with the plunger. The hammers were operated by one man, who, holding the hammer with the set pressed against the protruding end of the rivet and applying the air, completed the operation of forming another head on the rivet with the aid of a person located on the opposite side of the plates and pressing against the normal head of the rivet a device known as a "dolly bar."

The usual course pursued by the Dugan gang when riveting appears to have been as follows: Dugan heated the rivets and put them in place, W. H. Cole operated the hammer, and the plaintiff manipulated the dolly bar. In the afternoon of the accident, however, under the order of Dugan, the usual course of work mentioned was changed, so that the plaintiff operated the hammer and W. H. Cole handled the dolly bar. The particular work involved was patching a hopper car. The bottom of the car was wedge-shaped, and the sides of the wedge are called "hopper sheets"; it was one of these hopper sheets that was being repaired; the car seems to have been on trestles and about three feet above the floor. Dugan placed a heated rivet in one of the holes designed for it, and W. H. Cole pressed it through the two sheets with a dolly bar; this work was done from the outside of the hopper; the rivet stuck, and had to be driven out; whereupon the plaintiff, from the inside of the hopper, attempted and failed to drive the rivet out with a drift pin (an ordinary steel punch) and hammer. It is said that the usual way of driving out such a rivet was through the use of a "handle drift" and a sledge; but the plaintiff testified that the portion of the car in which he was required to work was so narrow that there was "not room enough to swing the sledge to hit the hand drift." Dugan, reaching through an adjacent opening into the hopper, grasped in one of his hands, on which he was wearing a glove, a drift pin and the exposed part of the set held in the hammer, placing the head of the drift pin against the head of the set and the end of the drift pin against the protruding end of the obstructed rivet, and then ordered plaintiff to turn the air into the hammer for the purpose of driving out the rivet. Plaintiff obeyed this order, with the result that the set was driven from Dugan's grasp, and, with the plunger, against the side of the car, so that one or the other rebounded, striking plaintiff under his left eye, and a small piece of steel was driven through this eye. The effect of the injuries was to destroy the left eye and to impair and threaten the sight of the other.

Dugan's gang was the only one at work in or about the repair shop during the afternoon of the injury. The general foreman of the car shop and his assistant, the foreman of the gangs of the car department, together with the gangs themselves, were given the privilege of attending a base ball game in the afternoon, and all availed themselves of the opportunity except the Dugan gang. Dugan testified: "We simply had the privilege of leaving if we wanted to, and we didn't exercise the privilege. * * * We had a job sheet the day of the accident; it was in my possession on the job. It was in my name; my name was at the head of the sheet. The other men's names were on the sheet. I supposed they put my name on the sheet first, because they wanted me to lead the gang. They told me to lead the gang, anyway." The plaintiff testified in respect of this occasion: "No foreman were [was] present except Dugan, foreman of our gang."

Thomas M. Kirby, of Cleveland, Ohio, for plaintiff in error.

A. E. Powell, of Cleveland, Ohio, for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge (after stating the facts as above). In view of the assignments of error and the contentions presented in support of them, it is important to call attention to the issues made both upon the pleadings and at the trial below. In addition to general allegations of the petition describing the situation and the acts which led to the injuries, plaintiff in substance alleged "full care and caution" on his part, and that the injury was "due solely and proximately to the negligent acts and omissions of the defendant": (a) In supplying the pneumatic hammer without a safety spring, which spring would have prevented the set from being driven from the hammer; and (b) in attempting through Foreman Dugan to drive out the obstructed rivet with the air hammer and a drift pin, and in giving the order in that behalf through Dugan, who knew that the order could not be safely obeyed, while plaintiff did not know this, or have equal means of knowledge with either defendant or its foreman giving the order. In its answer defendant admitted its corporate capacity, and operation of the railroad, that at the time in question plaintiff was in its employ and received certain injuries, but interposed a general denial as to every other allegation, and, "answering further," said that plaintiff's injuries were the direct and proximate result of risks which were open and obvious, and which were known to and appreciated by plaintiff, or in the exercise of ordinary care should have been known to and appreciated by him, and that "by reason of the premises the same were assumed." However, in the course of the trial, both in its cross-examination of one or more of plaintiff's witnesses and in presenting its own testimony, defendant sought to show contributory negligence of plaintiff.

At the close of plaintiff's testimony, and again at the close of all the testimony, defendant presented a motion to direct a verdict in its favor on the ground that there was not "sufficient proof of actionable negligence to entitle the case to go to the jury," and that, if there was "any proof of any negligent act upon the part of the defendant company, a clear case of assumption of risk as a matter of law is made upon the plaintiff's own testimony." Both motions were overruled, and

it need not be said that defendant's introduction of evidence operated as a waiver of error, if there were any, in denying the motion when it was first presented.

[1-4] 1. We are convinced that the testimony fairly and substantially tends to sustain the allegations of negligence on the part of defendant. In the first place, the testimony shows without denial that the pneumatic hammer, commonly called the "Little David," was furnished by defendant for this work and without a safety spring, and that a proper safety spring attached to the hammer would have held the set as well as the plunger in place at the time the air was admitted into the hammer upon Dugan's order. While there is testimony tending to show that at some time, seemingly prior to plaintiff's employment, defendant caused orders to be given orally, possibly amounting to a rule, that employés operating the air hammers should use safety springs with them, yet these orders were not carried out. According to some of defendant's own testimony, the men fell "into the habit of refusing to use the safety spring," and the company acquiesced in this practice. The company seems to have contented itself with keeping safety springs on hand, but without furnishing any, except upon the request of an employé. In practice, however, application for a spring or its use was rarely ever made; in a word, it was open to the jury to find that, if the company ever did impose a rule requiring the use of these springs, it knew prior to and at the time of the accident that the rule was not observed—in truth, that it was ignored. This derives importance in view of the admitted fact that the air hammer plaintiff was operating at the time of his injury was not provided with a safety spring, and of the clear conflict in testimony as to whether he was even instructed as to the need or the use of the spring. Further, plaintiff testified:

"I did not use the safety spring * * * while working for the company. I did not know that there were any safety springs provided."

And Dugan testified:

"We were not using one [a safety spring] on the day of the accident, because the bosses of our gang did not demand us to use them. I never made a request for them."

Whatever, then, may be the merit of the safety spring or the need of using one on a pneumatic hammer, it cannot be that it was error in the trial judge to decline, as in effect he did in denying the second presentation of the motion to direct, to hold as matter of law that the company could both indulge its employés in a practice not to use such springs and insist that their failure to do so absolved the company from all duty respecting such use. Such a course of conduct in an employer is manifestly inconsistent with his responsibility to an employé, and in principle is opposed to well-settled rules of decision in that behalf. Heskett v. Pennsylvania Co., 245 Fed. 326, 330, 157 C. C. A. 518 (C. C. A. 6); Coal Co. v. Marcum, 257 Fed. 287, —— C. C. A. ——, decided by this court January 7, 1919.

In the next place, the use to which the air hammer was put without a safety spring accentuates, not alone the defendant's neglect of duty to plaintiff in supplying him with such a working tool, but also the

character and degree of defendant's negligence in directing plaintiff to use the ill-equipped machine to drive out the obstructed rivet. Defendant itself presented testimony tending to show that Dugan's method already described, of driving out the rivet, was both unusual and dangerous; but it is observable that the danger so pointed out was a danger to Dugan rather than to the plaintiff, and this was because of Dugan's act in attempting to hold in contact the set, the drift pin, and the protruding rivet, end against end, for the purpose of utilizing the impact of the hammer when he ordered plaintiff to turn on the air. The fact that Dugan escaped, while plaintiff received injury from this act, cannot as matter of law be said to relieve defendant from the consequences of so conducting the work. In thus ascribing the work to defendant, we may again call attention to the testimony tending to show Dugan's immediate authority over his particular men and work, and his right of control; it can make no difference that there was testimony opposed to this; the test arose under defendant's second presentation of its motion to direct, and upon such a motion it was the duty of the court to take that view of the evidence most favorable to the plaintiff.

This presented the question whether Dugan was such a vice principal of the company that his order to turn on the air was binding on plaintiff, and clearly such an issue of fact was one for the jury. E. I. Du Pont de Nemours & Co. v. Kelly, 252 Fed. 523, 524, 164 C. C. A. 439 (C. C. A. 4); Moss v. Gulf Compress Co., 202 Fed. 657, 663, 664, 121 C. C. A. 67 (C. C. A. 5). More than this: Although some of the evidence tends to show both that Dugan was a fellow servant of the plaintiff and that Dugan's acts were of a careless and negligent character, directly causing the injury, yet under the rule of the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [Comp. St. §§ 8657–8665]), in spite of the opposed common-law rule, Dugan's negligence is to be treated as that of the defendant, and, prima facie at least, as entitling plaintiff to recover. Ches. & Ohio Ry. v. De Atley, 241 U. S. 310, 313, 36 Sup. Ct. 564, 60 L. Ed. 1016; Law v. Illinois Cent. R. Co., 208 Fed. 869, 870, 126 C. C. A. 27, L. R. A. 1915C, 17 (C. C. A. 6); Central R. Co. of New Jersey v. Young, 200 Fed. 359, 366, 118 C. C. A. 465, L. R. A. 1916E, 927 (C. C. A. 3). And here again an issue of fact was presented requiring submission to the jury. However, then, the showing of negligence on the part of defendant may be viewed, it is not open to defendant to insist, as it does, that upon that question plaintiff should have been nonsuited.

[5-7] 2. In reaching the conclusion just stated we of course have in mind that the position taken by defendant in both the answer and the motion to direct was in effect that, despite any showing of actionable negligence on its part, plaintiff must fail, as a matter of law, because of his assumption of the risk involved in applying the air to the pneumatic hammer at the time he received his injuries. Before taking up this feature, however, we may consider the question of contributory negligence, which, as we have already stated, defendant seems practically to have introduced at the trial. Defendant, through its cross-examination of plaintiff, brought out testimony tending to show that it had provided him with goggles, that he had been accustomed to wear them,

that cars were often "in a more or less rusty condition, and that the constant rapping of the hammer would jar those particles loose, and that they," as also "pieces from the rivets and what not," would "fly off," and yet that he was not wearing the goggles at the time of the accident; also through its cross-examination of Dugan defendant drew from him a statement that he had known plaintiff to use goggles, and that he was using them on the day, but not at the time of the accident. Defendant, moreover, introduced direct testimony tending to show that the men engaged in this character of work were all provided with goggles and requested to wear them, "to protect their eyes from flying pieces of steel or scale or anything that might fly in working with steel parts." We have seen that defendant also presented testimony to the effect that Dugan's method of driving out the rivet was unusual, and also that it was dangerous to him, because of the difficulty of holding the parts in place simply with the hand to receive the force of the hammer; and one of the obvious effects, if not a distinct purpose, of such proof of Dugan's act, was to emphasize plaintiff's need of goggles in turning on the air.

Without setting out further specific efforts of defendant to show plaintiff's conduct, it is clear enough from the testimony thus pointed out that its tendency was to charge plaintiff himself with fault; and in view of the apparent concurring effect of this with plaintiff's showing of defendant's negligence, we do not know of any term which so appropriately and accurately defines his claimed failure to use goggles as that of contributory negligence. It should be added that in rebuttal, after testifying that neither at the time of his employment nor at any time thereafter had the company's foreman of gangs instructed him to get goggles or to wear them continually, plaintiff explained that the work assigned him at the start was "to buck rivets," that is, to use the dolly bar; that when he commenced work one of his coworkers told him to obtain an order for goggles from the foreman of the gangs, and in this way he received a pair, but without any instructions at all. It would seem, from the description given of the goggles supplied by the company, that they were of heavy glass with the usual surrounding wire netting; but to what extent they would have afforded protection at the time of the injury is purely a matter of inference, and certainly is not to be stated as matter of law.

Further, it is to be inferred, from a special instruction defendant requested to be given to the jury, that it sought at the trial to show contributory negligence because of plaintiff's failure to procure and use a safety spring. The request follows:

"If you find from a preponderance of the evidence that the defendant furnished safety spring devices which were available to the plaintiff, that he knew the same were available to him, that he appreciated the purpose for which they were to be used, and he failed and neglected to use the same, and that such failure or neglect on his part was the direct and proximate cause of his injuries, then he cannot recover, and your verdict should be for the defendant company."

The request in this form was refused, though it was given with the necessary qualification that contributory negligence was not a complete defense. Grand Trunk Western Ry. Co. v. Lindsay, 201 Fed. 836,

844, 120 C. C. A. 166 (C. C. A. 7). Moreover, the learned trial judge understood that defendant was seeking to show negligence of the plaintiff, not only as contributing to the injury, but even as constituting the sole cause of the injury; thus in stating defendant's contentions he said:

"The defendant also, as a further defense, contends that the plaintiff was himself guilty of negligence, and that his negligence was the sole, proximate cause of the plaintiff's injuries, and that therefore for that reason he is not entitled to recover."

Despite the fact that the issue of contributory negligence was brought into the case through the evidence, counsel earnestly contend that it was error for the court to instruct the jury upon this issue. The basis of this is lack of formal issue of contributory negligence in the pleadings. Thus, at the close of the charge defendant requested the court, but the request was refused, to withdraw from the jury all that the court had said on the question of contributory negligence, and for the reason in substance that there was no predicate in the answer on which the question of contributory negligence could properly enter into the case—"even through the evidence." Granting the request would have been both to change the charge and to leave the evidence tending to show negligence of plaintiff himself and the course of trial in that behalf unexplained, either as to burden of proof or otherwise. It is to be noticed that the request did not include withdrawal of the evidence pointing to plaintiff's contributory negligence. Was it error, then, in the court below to explain the rights of the parties on the subject of contributory negligence? • It is said, in addition to the lack of formal pleading upon the subject, that under the general denial the evidence was admissible to contradict the allegations of negligence contained in the petition; but, conceding such admissibility, it is not enough. It leaves the contributory feature of the same evidence unexplained. Besides, it overlooks the effect of the federal Employers' Liability Act. The case is based on that act; and since contributory negligence does not bar the action, but only mitigates damages, it was not necessary, to the introduction of an issue in that behalf through the evidence, either to allege such negligence or present an issue on that subject in the pleadings. Kansas City Southern Ry. Co. v. Jones, 241 U. S. 181, 182, 36 Sup. Ct. 513, 60 L. Ed. 943.

Nor is there any local rule of decision affecting the course pursued below. Defendant's theory of formal allegation or issue in the pleadings is based on Traction Co. v. Forrest, 73 Ohio St. 1, at page 4, 75 N. E. 818, at page 819, where Judge Spear said:

"From this it follows that there was no issue in the pleadings respecting contributory negligence. Nor was such issue raised by the evidence."

And, besides, the doctrine of contributory negligence there in question would operate as a bar to the action. Further, the rule deducible from Rayland Coal Co. v. McFadden, 90 Ohio St. 183, 107 N. E. 330, and Glass v. Heffron Co., 86 Ohio St. 70, 98 N. E. 923, cases commented on by defendant, we think shows that the fact that the pleadings present no issue of contributory negligence is not the only

test of whether that issue may be rightfully introduced. Indeed, as we understand those cases, there is no difference of importance between them and the instant case; for although the answers there made, in addition to general denials, in substance alleged only that the injuries were caused by the fault and negligence of the respective plaintiffs, yet it was held in each case that such averments did not tender an issue of contributory negligence. This was to say that, unlike an ordinary plea of contributory negligence, those answers did not impliedly set up combined negligence. This is the most that could be claimed of the answer in the present case, even if the effect of contributory negligence were to bar the action, and not merely to mitigate the damages. In the Ohio cases last mentioned, however, evidence was submitted tending to show that both parties were negligent, that there was combined negligence; and so it must be said of the natural tendency and import of the evidence in the instant record.[1]

It must follow that it was the duty of the trial judge to instruct the jury upon the subject of contributory negligence and to rule that the burden of proving such negligence was upon the defendant; and as respects the ruling that the burden of proof also rested on defendant under its further defense that plaintiff's negligence was "the sole, proximate cause" of his injuries, as the trial judge understood the position taken by defendant, it is enough to say that if there was error in this ruling—a question we do not decide—it was certainly harmless, in view of the instruction the court had already given, that the burden was on the plaintiff to show defendant's negligence.

[8] 3. It remains to consider the subject of assumption of risk. This was made, as we have seen, an affirmative defense. It cannot be necessary to dwell upon that feature of the case. It was asserted in the motion to direct, as before shown, that, if there was any proof of any negligent act on the part of defendant, a clear case of assumption of risk as matter of law is made upon the plaintiff's own testimony. Our consideration of the applicable testimony satisfies us that it cannot be said, as matter of law, that plaintiff had any such knowledge of the situation as to understand that compliance with Dugan's order to turn the air into the pneumatic hammer involved danger to himself. The testimony, when rightly considered, does not seem to prove this; its tendency, as we have said before, was to show that the danger to be apprehended was to Dugan rather than to plaintiff. It is hence vain to insist that plaintiff assumed a risk that was open and obvious, as well as known to and appreciated by him. The authorities requiring submission to the jury are too numerous to justify citation.

We conclude upon the whole case that the trial was fair throughout, that the charge was as favorable to defendant as the nature of its defense warranted, and that no reversible error intervened; accordingly the judgment is affirmed.

[1] It is worthy of remark that, in the opinion denying motion for new trial, Judge Westenhaver expressed the belief that in view of the plaintiff's actual injuries his recovery was materially reduced by reason of the mitigating effects of the testimony in relation to contributory negligence.