ROY GROVER, APPELLANT, V. AARON FERER & SONS, APPELLEES.

FILED MARCH 17, 1932. No. 28121.

*Albert W. Jefferis* and *Reed, Ramacciotti & Robinson,* for appellant.

*Kennedy, Holland & De Lacy* and *Monsky, Katleman & Grodzinsky, contra.*

Heard before GOSS, C. J., DEAN and PAINE, JJ., and BROADY and RHOADES, District Judges.

PAINE, J.

The plaintiff, Roy Grover, was employed for a few weeks to work in the metal plant of the defendants in Omaha, and brought suit against them at common law for $40,000, alleging that he had contracted an occupational disease, known as lead poisoning, while in their employ. The jury returned a verdict in favor of the defendants. The plaintiff's motion and supplemental motion for a new trial having been overruled, he appeals to this court.

The amended and substituted petition, filed January 10, 1931, alleged that the defendants, Aaron Ferer & Sons, constitute a copartnership, consisting of the eight defendants named, and that their business is the purchase and sale of lead, copper, iron, and other metals, and the melting and refining thereof. The plaintiff entered their employ and worked for a few days in the junk yards, and then was directed to work in the melting room, where lead from old automobile batteries was melted in a large kettle, the aggregate weight of a single melting amounting to several tons, and plaintiff was directed to mix and stir certain chemicals therein. That one complete process required about nine hours, during which time a large quantity of poisonous dust, fumes and gases were constantly ascending from said kettle and impregnating the air in said room. That the defendants failed to furnish the plaintiff with a safe place to work, and failed to warn him of the latent and other dangers connected with said employment, and neglected to furnish any sort of mats or respirator to protect him from the dangerous effects of said fumes and gases, and that by reason of working therein, and under the conditions set out, the plaintiff became afflicted with lead poisoning, contracted because of the negligence of the defendants.

Defendants allege, in their amended answer, that plaintiff had had previous experience in foundries, where scrap lead was melted, and that he was familiar with the nature of the defendants' business and the condition of their plant, and that the risks, if any, therein were so open and

obvious to the plaintiff that they were assumed by him. Defendants deny that the plaintiff became afflicted with lead poisoning while working in their plant, but allege that, while plaintiff was employed by them, some hot water splashed upon his foot, causing him to jump, and, because of the fact that he was handling some metal at the same time, he strained his right arm, and deny that he received any injury whatever except the strained right arm, as set out above.

Defendants further charge that the records of the defendant company show that the plaintiff began work in the defendants' plant upon May 19, 1930, at which time he stated to one of the defendants that he had worked in a foundry in Kansas City; that after he worked for the defendants three or four days, sorting metal in the yards, he then worked on the big cutting shears, also out in the yard for five or six days, and thereafter worked at dumping the melted lead from a pipe running out from the bottom of a pot. The reply was a general denial.

Upon direct examination, the plaintiff stated that he worked six weeks in the foundry of the defendants, while the pay checks and time books showed that he started to work May 19 and quit work on June 20. He testified he worked part of the time in the yards and then worked for some days on the big shears before he went to work in the foundry.

Plaintiff testified that upon June 20, 1930, he reached down and got hold of a mould and turned it over, and that his wrist gave way and he let it drop, and it splashed hot water on his foot. He was given a slip and went to see Dr. Green, who put his wrist and arm under a light and then bandaged it, and that he went to see Dr. Green five or six different times; that his arm turned black, and swelled, and he was taken to the Nicholas Senn hospital; that shortly after the 4th of July he left the hospital, and then went back to see if the defendants would let him go back to work. Upon cross-examination, the plaintiff stated that he had worked three weeks at Council Bluffs

in the deaf and dumb school, had been on a farm for two months, where he got hit on the back of the right hand with an ear of corn. He testified that he had worked on different farms and in a logging camp, but he could only recall two places he had worked in the year 1929, being two months on a farm and three weeks at the deaf and dumb school in Council Bluffs, and the balance of the time he stayed at home with his mother. Before that, he was in Texas, came back to Kansas and was married, and then went back to Texas; that during 1928 he worked only enough to get gasoline for his car, as he was traveling around a good deal of the time. In 1927 he had worked three weeks for the American Radiator Company, filling moulds with sand, but quit work because he wanted to travel around.

The evidence disclosed that the foundry building is 60 feet long, 27 feet wide on one end and 45 feet wide at the other; that it has one window in the north end, the opening being 3 by 3 feet; that it has four windows on the east, with openings about four feet square; that it had a double door leading out to a platform about six feet four inches by eight feet; that there are three windows on the west side, the openings being larger than four feet square; that there is a large ventilator on the roof, with seven windows on the east side and seven windows on the west side; that this ventilator is 36 feet long and three feet two inches wide, and that in this there is an open louver, which is permanently open. Several photographs were introduced in evidence, showing the large ventilator in the top of the room and the location of the various equipment installed in the room. A large number of witnesses testified, and the bill of exceptions consisted of two large volumes.

Five errors of law are set out in appellant's brief as grounds for new trial: (1) The court erred in failing to instruct the jury as to the principles of statutory law applicable to plaintiff's cause of action; (2) the court erred in giving instructions numbered 8 and 11 as to the

assumption of risk, and in overruling plaintiff's thirteenth and sixteenth grounds for new trial, relating to said instructions numbered 8 and 11; (3) the court erred in giving instructions 5, 13, and 14, and in overruling plaintiff's tenth, eighteenth, nineteenth, and twenty-ninth grounds for new trial, whereby the issues of contributory negligence and comparative negligence, which were not in issue under the pleadings, were injected into the case for the consideration of the jury, and were necessarily prejudicial to the plaintiff's cause of action; (4) the court erred in giving undue prominence to the workmen's compensation law, when the same was not mentioned in defendants' answer, by giving instruction numbered 17; (5) the court erred in overruling appellant's supplemental motion for new trial because of newly discovered evidence.

1. The appellant first complains of the court's failure to instruct the jury concerning certain statutes applicable to the health and welfare of employees, and insists that the court should have instructed with reference to sections 48-403, 48-418, and 48-419, Comp. St. 1929. However, the appellant in his petition did not mention these provisions, nor call them to the court's attention, nor request any instructions with reference thereto, and no proof was offered that the plant was not constructed and operated, as to ventilators and windows, subject to the approval of the department of labor. The testimony shows that there was a blower or exhaust fan in the plant, near the south end of the melting room. The ventilators and the windows would tend to carry away the dust and fumes, as shown by the evidence. We see no reason which would require the court to instruct as to sections 48-418 and 48-419, Comp. St. 1929, as the evidence failed to show that any machinery was used in the melting room, or that such sections applied to this plant.

The court, in the tenth instruction, set out the law substantially as established by this court in the case of *Wiseman v. Carter White Lead Co.*, 100 Neb. 584, and we see no error therein.

The trial court did not err in failing to instruct the jury as to provisions of the statute which were not pleaded or called to the court's attention by offering an appropriate instruction, or otherwise.

2. In the second error relied upon for a reversal, complaint is made that instructions Nos. 8 and 11 do not state the law upon assumption of risk. In the recent case of *Campbell v. Chicago, R. I. & P. R. Co.*, 120 Neb. 499, we held: "An employee of mature years is taken to assume the risk of such dangers as are normally and necessarily incident to the occupation, whether he is aware of them or not." See *Walters v. Chicago G. W. R. Co.*, 98 Neb. 783.

The court, in the last part of instruction No. 11, said: "If you find that the plaintiff contracted lead poisoning or plumbism as a result of his employment with defendants, and further find that his injury was the result of a risk ordinarily incident to the performance of such work as he was doing, or if you find that his injuries resulted from dangers which were open, obvious and apparent to him or one of his understanding, or that were known by him, or that in the exercise of ordinary care should have been known by him, then the plaintiff cannot recover, and your verdict should be for the defendants." We cannot agree with the appellant that this instruction is contrary to the law, and we see no error therein.

3. The appellant, in his third proposition, charges that the court committed error by giving instructions setting out the law relating to contributory negligence, and that there was no specific allegation in the answer upon which to found such instruction. Our attention is called to the holdings that, where a servant continues to work with knowledge of dangers which an ordinarily prudent man would refuse to subject himself to, such servant is guilty of contributory negligence, especially where the danger is as open and obvious to the servant as to the master. 39 C. J. 838. It is contended by the appellee that the allegations of the answer amount in law to a plea of contribu-

tory negligence. The character of such plea must be determined by all the facts set up therein, and not by any particular language, and where each of the parties, by their introduction of evidence, have treated an issue as being raised in the pleadings, this court will not hold that the district judge was in error in instructing thereon. *Farnsworth v. Tampa Electric Co.*, 62 Fla. 166; *Pittsburgh, C., C. & St. L. R. Co. v. Cole*, 260 Fed. 357; *Fail v. Gulf States Steel Co.*, 205 Ala. 148; *Johnson v. Weskamp, ante*, p. 381.

The fourth ground for reversal insisted upon by the appellant is the undue prominence given by the court to the workmen's compensation law, as set out by the court in instructions No. 8 and in No. 17, which instructions told the jury that the suit on trial was for lead poisoning, and that they could not consider the accident which had occurred to the plaintiff when he dropped a mould and splashed hot water on one of his feet and strained one of his arms, as any disability resulting from that accident would come under the workmen's compensation law, for which accident he had been sent to the company doctor and treated for several days, and after which accident he had not worked for the defendant company at all; that the alleged error complained of was in the impression left with the jury, by these two instructions, that the workmen's compensation law was the important factor in the case, whereas there was no connection whatever between the accident and the alleged contracting of lead poisoning, for which this suit was brought under the common law, and appellant claims that without these two instructions the verdict would have been returned for the plaintiff.

The defendants admit that the plaintiff endeavored to show that no accident had happened to him on June 20, but the evidence discloses that an accident did happen, and plaintiff's arm was strained, and that he was given a slip which he took to the company's doctor, who treated him for several days, and, with this evidence before the jury, we see no error in the court giving the instructions mentioned.

The last ground insisted upon for reversal is based on newly discovered evidence, found in certain affidavits attached to the motion for a new trial, among them being the affidavits of two of the attorneys and of Joseph Anuskewicz, who was employed May 1, 1930, and who also had a suit for lead poisoning pending against the defendants, and in which he states that the day before the trial of the case at bar one of the defendants came to him and told him not to mention the dust or smoke or fumes in his evidence, and to say that the doors and windows were always open, and one of the attorneys told him to say it was all open and fresh air everywhere, and not a bad place to work, when the fact was that the room was always filled with heat and smoke and fumes and dust. In opposition to this last affidavit, the defendants submitted a counteraffidavit by the same Joseph Anuskewicz, in which he now states that he remembers that new respirators were brought to the foundry, and that he saw old respirators there that day, and that the smoke was bad in the foundry from about 9 o'clock to 10:30 in the morning, while the rubber was burning off from the battery tops, and that after that there was no smoke in the foundry, and that if he were again called to testify he would give the same testimony that he had originally given on the trial of the case at bar; and gave his reasons for signing the affidavit prepared by the attorneys for the appellant. We have carefully examined all of these affidavits, and this court has recently held: "If newly discovered evidence presents a material and important fact, germane to the issue in controversy, which, considered with the evidence presented on the trial, might cause a jury to take the other view, then a new trial should be granted, if diligence to secure the same has been shown." *Nelson v. State,* 121 Neb. 658. We do not consider that the evidence presented in the affidavits would add any new and important evidence which would cause the jury to change the verdict which they have rendered in the case.

Having examined all of the contentions set out by the

appellant with care, we are brought to the conclusion that the record shows that the case was carefully tried to the jury, that the instructions given were proper, and that no reversible error is to be found in this record, and the verdict of the jury for the defendants is sustained by the evidence. The judgment of the lower court is therefore

AFFIRMED.